# United States Court of Appeals
## For the First Circuit

No. 13-1050

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS MANUEL DEL VALLE-CRUZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Jedrick H. Burgos-Amador for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, with whom Rosa Emilia Rodríguez-Vélez, United
States Attorney, was on brief, for appellee.

April 6, 2015

**THOMPSON, <u>Circuit Judge</u>.** Defendant Carlos Manuel Del Valle-Cruz ("Del Valle-Cruz") was sentenced to twenty-one months in prison and seven years of supervised release after pleading guilty to one count of failing to register as a sex offender. By our count, this is the third time Del Valle-Cruz has been convicted of failing to register since his 1997 sex offense conviction. As troubling as that is, we note that he has not been charged with any other sex offenses in the intervening eighteen years. The terms of Del Valle-Cruz's supervised release include a series of special conditions that prohibit him from contact with minors and require him to undergo sex offender treatment -- terms that were not imposed as part of his sentence for the underlying sex offense. Moreover, these conditions were imposed in a boilerplate fashion, devoid of any explanation by the district court.

Del Valle-Cruz now seeks to vacate his conviction or, failing that, the aforementioned special conditions. A waiver of appeal bars Del Valle-Cruz's appeal of his conviction, as well as his appeal of most of the special conditions. However, as to his appeal of the conditions that would interfere with his relationship with his son, to avoid a miscarriage of justice, we decline to enforce the waiver and instead vacate those conditions that would prevent Del Valle-Cruz from contact with, or residing with minors. We will remand for de novo resentencing with respect to the supervised release term, so that the district court can consider

-2-

the supervised release conditions as a whole and in light of intervening precedent.  Upon remand for further proceedings on the special conditions, we invite the district court to revisit the conditions and to explain their justification in this case.

## I.

## Background

In Oklahoma in 1997, Carlos Manuel Del Valle-Cruz pled guilty to a sex offense against a child -- sexual battery.[1]  The charges arose from an incident that occurred while Del Valle-Cruz was working in a nursing center.  He approached a fifteen-year-old[2] volunteer, pushed her against a wall and touched and kissed her. Del Valle-Cruz, then thirty, claimed the encounter was consensual, but given the girl's age, consent was no defense.  He was sentenced to five years imprisonment, with three years suspended.

As a result of this conviction, Oklahoma required Del Valle-Cruz to register as a sex offender for a period of not less than ten years, commencing with his release from prison in 2001. In the event that he moved to another state, Del Valle-Cruz was required to register in the new state.  Although Del Valle-Cruz registered while living in Oklahoma, he moved to Florida and did

---

[1]Because the instant appeal arises from a conviction following a plea agreement, we draw the facts from the sentencing materials and plea colloquy.  See United States v. Whitlow, 714 F.3d 41, 42 (1st Cir. 2013).

[2]Although the Pre-Sentencing Report states that the victim was fifteen years old, Del Valle-Cruz contends that she was sixteen.

-3-

not register there. In 2003, he was arrested in Florida for domestic battery, and was also charged with failing to register as a sex offender. He pled guilty to both charges and was sentenced to a year in jail and three years probation.

In 2007, after a routine check of registered sex offenders, Florida authorities discovered that Del Valle-Cruz had absconded from his registered address. He was charged with, and again pled guilty to, failing to register, and received three years probation.

The following year, Del Valle-Cruz received a letter from the Oklahoma authorities notifying him that he had been assigned as a level three sex offender and would now be required to register for his lifetime. The letter directed him to contact the coordinator of the registration unit with any questions. He neither called nor took any action to challenge that classification.

In 2009, Del Valle-Cruz moved to Puerto Rico and began pursuing a degree in computer information systems. Although he once again failed to register, Del Valle-Cruz apparently worked diligently at his studies, and expected to graduate in May 2014. However, after Florida authorities discovered that he had once again absconded from his address there, they found out that Del Valle-Cruz had moved to Puerto Rico. A warrant was issued for his

arrest, and in April 2012, Del Valle-Cruz was indicted federally for failing to register pursuant to 18 U.S.C. § 2250(a).[3]

Del Valle-Cruz pled guilty pursuant to a plea agreement. The agreement contained a waiver of appeal clause that stated: "[T]he defendant . . . waives and permanently surrenders his right to appeal the judgment and sentence in this case." An expedited Pre-Sentence Investigation Report ("PSR") was prepared and disclosed to Del Valle-Cruz on December 11, 2012; the PSR recommended a variety of special conditions of supervised release. The next day, the district court conducted a hearing and sentenced Del Valle-Cruz to a term of imprisonment of twenty-one months, and a supervised release term of seven years. The district court set specific conditions of Del Valle-Cruz's supervised release. Pertinent to this appeal, the court accepted probation's recommendation that: (1) Del Valle-Cruz would have to participate in mental health and sex offender treatment, including submission to polygraph and PPG[4] testing; and (2) he was to have no contact with minors under the age of 18, would not be allowed to reside in

---

[3]18 U.S.C. § 2250(a) provides for a fine or imprisonment for up to ten years for sex offenders who travel in interstate commerce and knowingly fail to register or update a registration.

[4]"PPG testing 'involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses.'" United States v. Medina, 779 F.3d 55, 65 (1st Cir. 2015) (quoting United States v. Weber, 451 F.3d 552, 554 (9th Cir. 2006)).

the home with a child under the age of 18, and could not work or volunteer with minors. The conditions specified that Del Valle-Cruz was not to have any contact with minors "unless approved in advance by the U.S. Probation Officer."[5] Notably, Del Valle-Cruz has a son who is approximately nine years old.

After the court pronounced the sentence, Del Valle-Cruz objected, saying the original offense was (then) some fifteen years ago and the record did not reflect justification for the sentencing conditions. With no further elaboration on his objection Del Valle-Cruz simply asked the court "to make a record of that." The court noted the objection, but imposed the conditions. Notwithstanding his waiver of appeal, Del Valle-Cruz filed a timely appeal.

In March 2014, subsequent to filing this appeal, Del Valle-Cruz received a letter from the Oklahoma Department of Corrections informing him that he no longer needed to register in that state. The letter cited a recent Oklahoma Supreme Court decision which held retroactive application of that state's sex offender registration statute to be a violation of the Oklahoma state constitution's ex post facto clause. See Starkey v. Okla. Dep't of Corr., 305 P.3d 1004 (Okla. 2013).

---

[5]We shall explore the individual conditions in greater detail below.

Discussion

On appeal, Del Valle-Cruz seeks to vacate his conviction, citing the Oklahoma court's decision to support his argument that, at the time of his arrest, he had no duty to register. Alternatively and notwithstanding his appeal waiver, Del Valle-Cruz seeks to vacate some of the sentencing conditions as not reasonably related to the nature and circumstances of the offense of failing to register, or to his history and characteristics. He contends that the conditions deprive him of more liberty than is necessary to achieve the goals of supervised release. Specifically, he challenges the following conditions: 5) which prohibits him from working with minors; 6) which requires him to submit to sex offender treatment; 11) which requires him to submit to mental health treatment if he is diagnosed with a mental health disorder; 13) which prohibits any personal contact with minors; 14) which prohibits him from volunteering with minors; and 15) which prohibits him from residing with a minor without prior approval by the probation officer.

We can make quick work of Del Valle-Cruz's condition 11 challenge. He makes only a passing reference to condition 11, but makes no argument as to why imposing the mental health treatment condition would result in a miscarriage of justice. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort

at developed argumentation, are deemed waived." <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990). Accordingly, we deem this argument waived. That leaves us with conditions 5, 13, 14, and 15, which relate to interactions with minors, and condition 6, which involves sex offender treatment. We shall address these conditions separately.

The government points to the waiver of appeal clause and says that, contrary to Del Valle-Cruz's protestations, it should be enforced to bar the instant appeal, including the terms of release. Alternatively, the government argues that the imposition of the conditions of supervised release was not an abuse of discretion.

## A. Waiver of Appeal

We begin with the waiver of appeal clause in Del Valle-Cruz's plea agreement and determine whether it should bar this appeal. We review the validity of waivers of appeal by applying the three-prong <u>Teeter</u> test and ask: (1) whether the waiver's scope was clearly delineated; (2) whether the district court specifically inquired about the waiver of appellate rights; and (3) whether denial of those rights would constitute a miscarriage of justice. <u>United States</u> v. <u>Teeter</u>, 257 F.3d 14, 24-25 (1st Cir. 2001). The first two prongs of this test are directed to ensuring that "the defendant freely and intelligently agreed to waive [his] right to appeal." <u>Id.</u> Although Del Valle-Cruz concedes in his reply brief

that his waiver was knowing and voluntary, he argues that enforcing the waiver would result in a miscarriage of justice.

"To successfully invoke the miscarriage of justice exception, a garden-variety error will not suffice, rather there must be, at a bare minimum, an increment of error more glaring than routine reversible error." United States v. Santiago, 769 F.3d 1, 8 (1st Cir. 2014) (internal quotation marks omitted) (citing United States v. Chambers, 710 F.3d 23, 31 (1st Cir. 2013)). Del Valle-Cruz argues that there are two such errors. First, his actual conviction for failing to register, because he claims that under Oklahoma law, he was no longer required to register at the time of his arrest. Second, the sentencing conditions, which he argues are not reasonably related to the goals of supervised release. We will address each in turn.

### 1. Waiver of Right to Appeal Conviction

Del Valle-Cruz first argues that we should not enforce the waiver to bar the appeal of his conviction for failing to register, because his Oklahoma registration period was impermissibly enlarged from ten years to his lifetime, without the benefit of a hearing. Del Valle-Cruz supports this argument by citing the letter he received last year advising him that he was no longer required to register in Oklahoma, a letter prompted by the ruling in Starkey. According to Del Valle-Cruz, because extensions like his violated the Oklahoma state constitution's ex post facto

clause, he was only required to register for the originally-imposed ten years. That registration period would have lapsed by the time he was arrested in Puerto Rico in 2012, and therefore Del Valle-Cruz contends it cannot be used to support his federal failure-to-register conviction.

Del Valle-Cruz was convicted under the federal Sex Offender Registration and Notification Act ("SORNA"), which was enacted in 2006 in an effort to make the existing scheme of state registration "more comprehensive, uniform, and effective." Carr v. United States, 560 U.S. 438, 441 (2010). SORNA defines "sex offender" as "an individual who was convicted of a sex offense," and requires that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides." 42 U.S.C. §§ 16911, 16913.

The triggering event for the duty to register is a sex offense conviction, not a state sentence requiring registration as Del Valle-Cruz argues. It would be illogical for SORNA to operate to make state registrations more uniform, while at the same time allowing individual states to determine which sex offenders have a duty to register when they leave that state. Further, SORNA sets out the minimum duration of registration for three "tiers" of offenders. 42 U.S.C. § 16915 requires a registration period of fifteen years for tier I sex offenders, twenty-five years for tier II and lifetime for tier III. According to the Attorney General,

-10-

SORNA "establishes minimum national standards, setting a floor, not a ceiling" for the individual states. The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030-01, 38,032 (July 2, 2008). Jurisdictions may choose to exceed the guidelines in some areas, including the duration of registration, but they must meet the minimum standards to comply with SORNA. Id.

Del Valle-Cruz's original conviction for a sex offense against a child makes him a sex offender under SORNA. And once he crossed the Oklahoma state line, he had a duty under federal law to register. SORNA's shortest registration period is fifteen years, and that period begins when the offender is released from prison. See 42 U.S.C. § 16915(a) (registration period excludes time the offender was in custody). Del Valle-Cruz was released in 2001; even at tier I his duty under the federal statute would continue until 2016.

Accordingly, we find no error, let alone an error significant enough such that enforcing the waiver of appeal would result in a miscarriage of justice. Del Valle-Cruz's waiver is enforceable to bar the appeal of his conviction for failing to register.

## 2. Waiver of Right to Appeal Sentencing Conditions

Del Valle-Cruz also appeals certain conditions of his supervised release, and the government presses its argument that

the waiver of appeal clause should operate to bar his challenge to all of these conditions.

### a. Sex Offender Treatment

Knowing and voluntary waivers of appeal are binding as long as the denial of the right to appeal would not constitute a miscarriage of justice. Teeter, 257 F.3d at 25. That is a high hurdle for Del Valle-Cruz to clear. Del Valle-Cruz contends that the imposition of sex offender treatment with no explanation, and without any indication that he had an inclination to commit another sex offense, is an error rising to the level of a miscarriage of justice.

We find that Del Valle-Cruz's case is much like United States v. Morales-Cruz, 712 F.3d 71 (1st Cir. 2013), which involved similar facts. There we affirmed the imposition of sex offender conditions upon a defendant whose sex offense had been committed some sixteen years prior to his conviction for failing to register. Like Del Valle-Cruz, the defendant in Morales-Cruz also had multiple failure to register convictions, and a more recent conviction for domestic battery. Id. at 73. Although the Morales-Cruz court did not give a very lengthy explanation for the imposition of sex offender treatment, in stating that the sentence and conditions were appropriate, the court referenced the goals of deterrence, avoiding recidivism, protecting the community, and rehabilitation. Id. at 73-74. Here, the court imposed sex

-12-

offender treatment conditions upon Del Valle-Cruz without any justification or explanation, and although it may have been error to provide no reasoning for its decision, given our precedent upholding such conditions under similar factual circumstances, we cannot say it was "an increment of error more glaring than routine reversible error." Santiago, 769 F.3d at 8. In light of Morales-Cruz, we see no miscarriage of justice and find that the waiver of appeal bars our review of the merits of the sex offender treatment condition.[6]

### b. No Interaction With Minors

Del Valle-Cruz next argues that the sentencing conditions barring him from personal contact with minors impermissibly interfere with his constitutional right to raise his child. On this point, we at least partially agree.

---

[6]Recently, in Medina, where a waiver did not prevent our reaching the merits of a similar condition, we found the use of PPG testing extremely troubling due to its questionable reliability and its extraordinary intrusiveness. 779 F.3d at 74. Given the humiliating nature of the testing, and concerns about its record as a "treatment" tool, we held that "in order for the condition [imposing PPG] to be deemed facially reasonable, district courts must provide a more substantial justification, at least once a defendant objects." Id. at 72. Del Valle-Cruz did not voice a specific objection to PPG testing. However, we are remanding for resentencing as explained infra. Upon remand, while revisiting the special conditions of supervised release, the district court must also give due consideration to our decision in Medina. Additionally, conditions of supervised release can be modified once a defendant is released from imprisonment. Fed. R. Crim. P. 32.1(c).

"Relief under the miscarriage of justice exception is often sought but seldom meted out." Santiago, 769 F.3d at 10. Nevertheless, we have granted relief when an error of significant or constitutional dimension is clear, and where there is "little prejudice to the government should we take up the merits of [the defendant's] appeal given that the government fully briefed this issue." Id. Here, the error is clear. Not only did the district court impose onerous conditions without explanation or justification, but more importantly, two of these conditions (13, prohibiting personal contact with minors, and 15, prohibiting residing with minors) implicate a fundamental constitutional liberty interest -- the relationship between parent and child. See Quilloin v. Walcott, 434 U.S. 246, 255 (1978).

When imposing special conditions we, along with our sister circuits, have "consistently required district courts to set forth factual findings" to justify those conditions. United States v. Perazza-Mercado, 553 F.3d 65, 75 (1st Cir. 2009) (quoting United States v. Warren, 186 F.3d 358, 366 (3d Cir. 1999)). Other circuits have vacated conditions barring contact with minors when they were imposed with no explanation. United States v. Thompson, 777 F.3d 368, 376 (7th Cir. 2015) ("Because the district court has not provided any explanation of how this condition [barring contact with minors] is reasonably related to [the defendant's] offense and background or to the goals of punishment, involving no greater

-14-

deprivation of liberty than is reasonably necessary to achieve these goals, we vacate the condition." (quoting United States v. Goodwin, 717 F.3d 511, 523-24 (7th Cir. 2013))); see also United States v. Davis, 452 F.3d 991, 995 (8th Cir. 2006) (finding that a district court's failure to make an individualized determination before imposing conditions that interfered with the defendant's parental rights was clear error).

The record before us is devoid of any justification for the imposition of conditions that would deprive Del Valle-Cruz of any meaningful relationship with his son. The imposition of these conditions -- justified by neither the government nor the court -- was a significant error. Although a court's failure to explain its reasoning for the imposition of conditions does not automatically result in a miscarriage of justice, where, as here, the error is of this constitutional dimension, there can be no doubt that enforcement of the waiver would be a miscarriage of justice. As for prejudice, we conclude the government will suffer no detriment if we allow Del Valle-Cruz to challenge these conditions, as it has amply briefed the issue. Accordingly, we decline to enforce the waiver of appeal as it relates to conditions 13 and 15.

Del Valle-Cruz also challenges the imposition of condition 5, prohibiting him from working with minors, and condition 14, prohibiting him from volunteering with minors. He makes no specific argument relative to these two conditions,

leaving us to surmise that he intended that his arguments against the "contact with minors" conditions would apply equally to all four of the challenged conditions. However, conditions 5 and 14 are different; these conditions touch upon Del Valle-Cruz's liberty interest, but they do not present as great an infringement. Although we are troubled by the imposition of conditions that would prevent him from engaging in activities such as volunteering at his son's school, particularly since his underlying offense is so temporally remote and since he has shown no inclination to abuse minors in the intervening years since his initial offense, we cannot say with assurance that their imposition would result in a miscarriage of justice. Because Del Valle-Cruz's underlying conviction arose from an incident that took place in his workplace, with a minor volunteer, these two restrictions are at least reasonably related to his history and characteristics. Accordingly, we will enforce the waiver of appeal as it relates to conditions 5 and 14, and we will proceed to consider the merits of the appeal of the remaining conditions, 13 and 15.

## B. Appeal of Sentencing Conditions

Del Valle-Cruz challenges the sentencing conditions prohibiting him from having personal contact with, and living with, any minor child as not reasonably related to either his offense or his history and characteristics, arguing the district court abused its discretion because there is nothing in the record to suggest

that he poses a danger to children.  As such, he contends that these conditions would deprive him of more liberty than is necessary because they would interfere with his ability to "form a family with a single mother and partake in raising his son."

We have frequently stated that conditions and terms of supervised release are part of a defendant's sentence.  Santiago, 769 F.3d at 7 (citing 18 U.S.C. § 3583).  We review conditions of supervised release for abuse of discretion.  Morales-Cruz, 712 F.3d at 72.  Despite the brevity of the defendant's objection at his sentencing hearing, we see no reason to apply plain error review, particularly because the government and Del Valle-Cruz agree that our review is for abuse of discretion.  "[A]buse of discretion is not a monolithic standard.  Within its margins, embedded issues may receive attention under more narrowly focused standards.  Thus, embedded questions of law engender de novo review and embedded findings of fact engender clear-error review."  United States v. Carrasco-De-Jesús, 589 F.3d 22, 27 (1st Cir. 2009).  The abuse of discretion standard "is not a rubber stamp, counseling affirmance of every discretionary decision made by a trial court."  Colon-Cabrera v. Esso Standard Oil Co. (P.R.), Inc. 723 F.3d 82, 88 (1st Cir. 2013) (internal quotation marks omitted).  "The court exceeds its discretion when it fails to consider a significant factor in its decisional calculus, if it relies on an improper factor in computing that calculus, or if it considers all of the appropriate

-17-

factors but makes a serious mistake in weighing such factors." Id. (internal quotation marks omitted).

In assessing the validity of the conditions of supervised release,

> we apply 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3(b), which require that special conditions cause no greater deprivation of liberty than is reasonably necessary to achieve the goals of supervised release, and that the conditions be reasonably related both to these goals and to the nature and circumstances of the offense and the history and characteristics of the defendant.[7]

Perazza-Mercado, 553 F.3d at 69 (internal quotation marks and citations omitted). The district court is required to provide a "reasoned and case-specific explanation" for the conditions it imposes. Id. at 75. This requirement is rooted in 18 U.S.C. § 3553(c) which mandates that "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence." In addition to ensuring an individualized sentence, this reasoned explanation enables our appellate review. Perazza-Mercado, 553 F.3d at 75. Further, "courts of appeals have consistently required district courts to set forth factual findings to justify special probation conditions." Id. (quoting Warren, 186 F.3d at 366). These factual

---

[7]The goals of supervised release include: affording adequate deterrence; protecting the public; and rehabilitating the defendant. 18 U.S.C. § 3553(a)(2).

-18-

findings must have "adequate evidentiary support in the record." United States v. York, 357 F.3d 14, 20 (1st Cir. 2004).

Although we oblige the district court to "provide a reasoned and case-specific explanation," no explanation was provided here. Perazza-Mercado, 533 F.3d at 75. Nevertheless, our analysis does not end there; "even in the absence of an explanation from the court, a court's reasoning can often be inferred after an examination of the record." Id. (internal quotation marks omitted). Accordingly, because the district court has given us no guidance whatsoever as to the rationale for the conditions it imposed, we look to the record to determine whether the court's reasoning can safely be inferred.

As we said, Del Valle-Cruz disputes the validity of conditions 13 and 15, which, to remind the reader, relate to personal contact with minors and residing with minors, respectively. Because both of these conditions would greatly impact Del Valle-Cruz's ability to have a normal relationship with his son, we will address them together.

### Reasonable Relation

We recognize that a district court "may impose any special condition of supervised release that it considers appropriate," but the court's discretion is limited by the caveat that the conditions must be reasonably related to "the nature and circumstances of the offense and the history and characteristics of

the defendant." Morales-Cruz, 712 F.3d at 74 (internal quotation marks omitted). Del Valle-Cruz first argues that these conditions are not reasonably related to his offense, because the crime of failing to register did not involve sexual conduct, and the underlying sex offense was temporally remote. Moreover, he points out that these conditions were not even imposed at the time of his original sex offense conviction. Nor, he contends, are the conditions reasonably related to his characteristics, because he has not committed similar conduct in the intervening eighteen years, and there is no evidence to suggest that he has a propensity to commit a future sex offense.

In United States v. Medina, we vacated a condition barring a defendant's access to otherwise legal pornography as not reasonably related because "there [was] no evidence in the record to indicate that such material contributed to [the defendant's] offense or would be likely to contribute to recidivism in the future given [his] particular history and characteristics." 779 F.3d 55, 63 (1st Cir. 2015) (internal quotation marks omitted). Similarly, there is nothing in the record before us to indicate that the presence of a child in the home contributed to Del Valle-Cruz's offense, nor that residing with a child would increase Del Valle-Cruz's risk of recidivism.

It is also troubling that the conditions were imposed so many years after Del Valle-Cruz's underlying sex offense

-20-

conviction.  In Morales-Cruz, 712 F.3d at 75-76, we analyzed six cases from other circuits that reversed sentencing conditions while expressing this same concern.  Ultimately, we determined that all of those cases were distinguishable.  Id.  However, the defendant in Morales-Cruz challenged the imposition of sex offender treatment, not conditions barring contact with minors.  Id. at 72. Here, given the gravity of the liberty interest at stake, the concept of basing such an invasive condition on an offense many years in the past remains disturbing.  Although not binding on us, we note our sister circuits continue to take a dim view of equivalent sentencing conditions based on temporally remote sex offense convictions where there has been no subsequent similar conduct.

The Seventh Circuit, in Goodwin, 717 F.3d at 523, vacated a condition prohibiting contact with minors, saying, "We are skeptical that such a sweeping condition could be reasonably related to [defendant's] offense, history and characteristics, particularly since there is no evidence in the record of any incidents involving minors in the almost two decades since [defendant's] 1994 conviction."  Notably, the district court in Goodwin "did not discuss its reasons for imposing" the special conditions, leading the Seventh Circuit to caution that "district courts' ability to impose no-contact conditions does not absolve them of their responsibility to explain why such conditions are

warranted in particular cases." Id. at 515, 524.  In United States v. Bear, 769 F.3d 1221, 1229 (10th Cir. 2014), the Tenth Circuit held that a sex offense conviction twelve years earlier, absent either a history of other sexual offenses or evidence of a propensity to commit future sex offenses, was "simply too remote in time, standing alone" to justify the imposition of conditions that would limit the defendant's ability to live with his children.[8]

We find the reasoning of these cases persuasive in this particular instance.  Here, although Del Valle-Cruz was convicted of violating SORNA by failing to register, that offense "is not itself a sex offense."  United States v. Mercado, 777 F.3d 532, 538 (1st Cir. 2015) (citing U.S.S.G. § 5D1.2, cmt. n.1).  Del Valle-Cruz has not committed a sex offense in the eighteen years since his original conviction.  Moreover, the special conditions were not imposed when Del Valle-Cruz was initially sentenced for the earlier sex offense.  In the intervening years, although Del Valle-Cruz has

_____

[8]In United States v. Bear, a defendant who had been convicted in 2001 of two counts of committing lascivious acts with a child (having forced one child under twelve to engage in oral sex and intercourse, and fondled the genitals of another child), appealed the conditions imposed after his second failure-to-register conviction.  769 F.3d 1221, 1225 (10th Cir. 2014).  The defendant challenged conditions ordering sex offender treatment, as well as conditions prohibiting contact with minors.  Id. at 1226. The 10th Circuit cited our decision in Morales-Cruz as authority for affirming sex offender conditions for SORNA violations, and affirmed the imposition of sex offender treatment, but vacated the restrictions on contact with minors because they posed a greater deprivation of liberty than reasonably necessary.  Id. at 1226-27, 1229.

committed other crimes, he has not been arrested for any crime sexual in nature or involving a minor.[9]  Like Goodwin, the district court offered no hint of the reasoning behind the imposition of these conditions.  717 F.3d at 515.  There is simply nothing in the record before us that indicates a propensity to commit a future sex offense, particularly as it relates to minors.

Although we recently upheld similar restrictions on contact with minors in Santiago, 769 F.3d at 4-5, we note that the facts surrounding the underlying sex offense conviction in Santiago are distinguishable.  The defendant in Santiago was convicted of failing to register in 2012; ten years earlier, he had been convicted of lewd molestation and child abuse after molesting the seven-year-old daughter of his live-in girlfriend.  Id.  We affirmed the imposition of the "undoubtedly stringent" conditions limiting Santiago's contact with minors in part because his "living arrangements mirrored those from when the [underlying sex offense] occurred."  Id. at 9.  The same danger does not exist here.  Del Valle-Cruz did not victimize a child in his home.  In fact, he has two older (now adult) children, with whom he lived without incident for six years.  We also note that the district court in Santiago

---

[9]Since his 1997 sex offense conviction, in addition to failing to register as a sex offender, Del Valle-Cruz had been convicted of possessing contraband in a penal institution (1998), petit larceny (2002), possession of marijuana (2002), and domestic battery (2003).

reasonably explained the necessity of imposing the conditions; here, the district court offered no justification whatsoever.

More recently, in Mercado, 777 F.3d at 535, we reviewed for abuse of discretion a condition that prohibited a defendant from contact with minors (including his two children) without the prior approval of his probation officer.  We find Mercado and Del Valle-Cruz's case factually dissimilar.  The defendant in Mercado was convicted of indecent assault in 2002 -- a charge that arose from the rape of a fifteen-year-old girl.  Id. at 534.  This was not an isolated incident; his resume of criminal activity spanned a period of over twenty years.  Id.  By the time he pled guilty to failing to register as a sex offender, some ten years after the rape, he had racked up "over 45 infractions running the gamut from drug offenses to property crimes to violent crimes (such as domestic assault and domestic battery)."  Id.  This was a spree so impressive that the district court observed "the defendant had what may have been one of the most profuse criminal histories" that court had ever seen.  Id.  Even after his arrest for failing to register, he didn't allow the terms of his pretrial release to break his stride.  Id.  Instead, while awaiting trial, he continued to fail to register, blew off a court appearance for driving without a license, tested positive for cocaine use and scored "no fewer than ten instances of failing to comply with location

restrictions." Id. Not surprisingly, the court determined that he presented an "obvious risk of recidivism." Id. at 539.

The Mercado court spun "a web of special conditions" in the hope that "if the defendant complied with the supervised release terms, he might have a chance to break the 'cycle of crime' that characterized his adult life." Id. at 535. Among these conditions were restrictions on living with or interacting with minors. Id. In imposing these conditions, the court gave detailed, case-specific reasons for their imposition, explaining, "the sentence was driven by three salient considerations: the nature of the offense, the defendant's criminal history, and the defendant's 'egregious' non-compliance with the terms of his pretrial release." Id. In addition to demonstrating that the conditions were related to the defendant's history and characteristics, the court explained that the conditions "would promote the defendant's rehabilitation," "were intended to mitigate the risk of this particular defendant re-offending," and "promoted public safety." Id. at 538-39. We affirmed the challenged conditions, holding that "the court specifically linked the rehabilitative and deterrent features of the supervised release term and its conditions to the defendant's lengthy criminal history and his persistent failure to comply with the terms of his pretrial release." Id. at 539.

The Mercado court's careful explanation of its reasoning made plain the conditions were reasonably related to the defendant's history and characteristics, and to the goals of sentencing. By contrast, the district court here offered no explanation whatsoever for the conditions imposed on Del Valle-Cruz, whose criminal history is not nearly as lengthy or as violent as that of the defendant in Mercado. Aside from failing to register, Del Valle Cruz has stayed out of trouble since 2003.

While the Mercado court crafted its conditions to give the defendant "a chance to break the 'cycle of crime' that characterized his adult life," id. at 535, Del Valle-Cruz's adult history, though blemished, simply does not come close to resembling Mercado's. Since moving to Puerto Rico, he has taken affirmative steps to turn his life around. According to his PSR, he has completed 90 credits of a BA in Computer Science, and at the time of his arrest, was employed by a newspaper as a telemarketer, while also working freelance as a computer repair technician. The conditions that were carefully reasoned (and amply explained) in Mercado do not serve the same purpose in this case. Mercado's criminal history showed little regard for the welfare of his children or for maintaining a healthy and nurturing family life. Del Valle Cruz, on the other hand, once lived successfully with his older children, and his schooling and employment demonstrate increasing stability in recent years.

-26-

The district court provided us no clue as to its reasoning, and our review of the record offers little to enlighten us. Although the PSR recommends the conditions, it offers nothing in its recitation of the defendant's history or characteristics to justify them, and absent any basis in the record, their imposition appears to be arbitrary. We fail to see how prohibiting Del Valle-Cruz from living with his son and having a normal family life (that would involve at least some contact with minors) is related to either his offense of failing to register, or to his history and characteristics.

### Deprivation of Liberty

Del Valle-Cruz also argues that the effect of these conditions would deprive him of his liberty interest in maintaining a relationship with his son. We have frequently stated that conditions may not deprive a defendant of "more liberty than is reasonably necessary." Perazza-Mercado, 553 F.3d at 70. The government points to Del Valle-Cruz's initial offense against a fifteen year old as justification for imposing the prohibition against contact with all minors, including his own son. The fallaciousness of this argument is indicated by the government's failure to explain why these conditions do not deprive Del Valle-Cruz of more liberty than is reasonably necessary. Instead, the government relies on an escape hatch -- that Del Valle-Cruz can seek a modification of these conditions.

In Mercado, we affirmed similar conditions, saying "the conditions imposed by the district court do not comprise an outright ban on the defendant's ability to associate (or even live) with his minor children. They merely require that his association with his children be pre-approved by the probation officer and take place in the presence of an adult familiar with his criminal history." 777 F.3d at 539. However, as previously explained, the Mercado court's rationale for the conditions was clear and detailed, and grounded in concern over his extensive criminal history. "[T]he court specifically linked the rehabilitative and deterrent features of the supervised release term and its conditions to the defendant's lengthy criminal history and his persistent failure to comply with the terms of his pretrial release."[10] Id.

Because conditions that would impair a defendant's relationship with his child involve a very significant deprivation of liberty, they require a greater justification. See Medina, 777 F.3d at 72. The explanation for the imposition of these conditions

_____

[10]Similarly, in United States v. Smith, 436 F.3d 307, 310 (1st Cir. 2006), we affirmed the imposition of a condition that prohibited a defendant from contact with his minor daughter "unless and until the Probate Court ordered otherwise." The condition was imposed after the defendant violated the terms of his supervised release by causing a disruption at two schools and a school district office, demanding to see his daughter. Id. at 310. In imposing the condition, the Smith court expressed a concern that members of the public, including the daughter, needed to be protected from the defendant -- a concern not present here. Id. at 312.

on Del Valle-Cruz is entirely missing, as is any indication in the record that his history and characteristics should evoke similar concerns. The fact that the probation officer retains the discretion to allow a father to contact his son cannot relieve the district court of the obligation to provide a reasoned explanation for giving the officer that power in the first place. We have previously stated that the imposition of these conditions by the court appears to be arbitrary. Likewise, Probation's recommendation of the conditions with no explanation appears equally arbitrary. We therefore decline the government's invitation to punt by placing a probation officer between parent and child.

Our sister circuits have refused to delegate this authority to Probation absent some justification for imposing the condition. The Third Circuit warned that courts should "proceed cautiously in imposing any condition that could impact [a defendant's] parental rights absent sufficiently reliable supporting evidence." United States v. Voelker, 489 F.3d 139, 155 (3d Cir. 2007). In Voelker, the court vacated a condition restricting the defendant from associating with minors without the prior approval of a probation officer, and remanded for further findings of fact after determining that the district court had "delegated absolute authority to the Probation Office to allow any such contacts while providing no guidance whatsoever for the

exercise of that discretion." Id. at 154. As a result of this delegation, the "[p]robation [o]fficer becomes the sole authority for deciding if [the defendant] will ever have unsupervised contact with any minor, including his own children, for the rest of his life." Id. The Voelker court acknowledged that parental rights are not absolute, but stated that before restrictions can be placed on those rights "there must be sufficient evidence to support a finding that children are potentially in danger from their parents." Id. (internal quotation marks omitted).

The Fourth Circuit held a prohibition on contact with minors to be error when it affected a defendant's relationship with his family in the absence of any justification. Worley, 685 F.3d at 408. The Worley court held "if the evidence fails to show that the defendant poses a danger to his own child or loved one, a condition that limits access to those individuals is not reasonably necessary to protect those individuals or further the defendant's rehabilitation." Id. Likewise, the Eighth Circuit modified a sentencing condition that would have prevented a defendant convicted of receiving child pornography from having any contact with his daughter.[11] Davis, 452 F.3d at 995. Despite the sexual nature of the conviction, the Davis court found that the lower

---

[11]It is worth noting that in both Worley and Davis, the court struck down conditions that, like Voelker, allowed at least some contact if first approved by a probation officer. 685 F.3d at 407; 452 F.3d at 994.

-30-

court had failed to make an "individualized analysis" of the case; an analysis that would have revealed no evidence in the record that the defendant had ever sexually abused a child, or would pose a danger to his daughter. Id. The court held that when a condition would interfere with a defendant's "constitutional liberty interest in raising his own child, the government may circumscribe that relationship only if it shows that the condition is no more restrictive than what is reasonably necessary." Id. Finally, and most recently, the Tenth Circuit vacated a condition prohibiting a defendant from contact with minors without prior approval from probation, saying, "Given the importance of this liberty interest, special conditions that interfere with the right of familial association can do so only in compelling circumstances, . . . and it is imperative that any such restriction be especially fine-tuned to achieve the statutory purposes of sentencing." Bear, 769 F.3d at 1229 (internal quotation marks and citations omitted). Given the facts of Del Valle-Cruz's case, we find the reasoning of our sister circuits persuasive in this instance.

Our review of the record reveals no showing that conditions 13 and 15 are no more restrictive than reasonably necessary, and as stated above, there is nothing to indicate that Del Valle-Cruz poses a danger to his son. We have found that the conditions are not reasonably related to either the offense, or to Del Valle-Cruz's history and characteristics. At the same time,

these conditions prohibiting contact with, or residing with minors would interfere with his relationship with his son, and deprive him of far more liberty than is reasonably necessary. Even were the conditions amended to allow him to live with his son, the prohibition against contact with other minors would ensure that Del Valle-Cruz could not engage in the normal rhythms and pleasures of parenting, such as attending birthday parties, family gatherings, or school outings. For those reasons, we vacate conditions 13 and 15.

## III.

### Conclusion

We dismiss Del Valle-Cruz's appeal of his conviction, as well as the conditions imposing sex offender treatment, and prohibiting working with or volunteering with minors. We vacate conditions 13 and 15, and we remand to the district court for re-sentencing consistent with this opinion. The re-sentencing shall be limited to the terms of supervised release, and at that time, given the concerns we have expressed herein, the district court may revisit all of the special conditions. United States v. Francois, 715 F.3d 21, 34 (1st Cir. 2013) ("[P]recedent in this Circuit establishes that 'an appellate ruling invalidating a sentence . . . may implicate the trial judge's comprehensive, interdependent imposition of a penalty and thus require resentencing on all counts.'" (quoting United States v. Melvin, 27 F.3d 710, 712 (1st

-32-

Cir. 1994))). At resentencing the district court should explain its reasons for the imposition of conditions and provide factual findings supported by the record.

**-Concurring Opinions Follows-**

**TORRUELLA, Circuit Judge, concurring, with whom THOMPSON, Circuit Judge, joins in the concurrence.** I join the court's opinion but write separately to note my continued and vehement disagreement with United States v. Morales-Cruz, 712 F.3d 71 (1st Cir. 2013), a case that forecloses us from finding a miscarriage of justice with respect to the sex offender treatment condition. See Slip. Op. at 12-13. As I explained in my dissent in Morales-Cruz, a case remarkably similar to the one presently before us, "the district court's imposition of the special condition of supervised release -- participation in a sex offender treatment program with accompanying requirements -- [wa]s not reasonably related to the factors set forth in section 3553(a)(1)," nor was it "sufficiently related to one or more of the permissible goals of supervisory release." Morales-Cruz, 712 F.3d at 76 (Torruella, J., dissenting) (internal quotation marks and citations omitted). The same is true here. The district court inexplicably failed to give any explanation as to why it was imposing this condition on Del Valle-Cruz or how the condition was reasonably related either to the nature and circumstances of his failure to register offense or to his criminal history and characteristics. Yet, because of Morales-Cruz, this panel cannot remedy what, in my view, is a clear abuse of discretion and miscarriage of justice by the district court.

Unfortunately, this is not an isolated occurrence. There is a disturbing trend in this circuit of district courts imposing

similar boilerplate conditions of supervised release on every defendant convicted of a failure to register charge under SORNA.[12] Even more troubling, these district courts often neglect to provide any rationale for the imposition of these harsh and exacting conditions; instead, they simply note that the conditions "are fairly standard" in these types of cases. See, e.g., United States v. Mercado, 777 F.3d 532, 535 (1st Cir. 2015) (approving of the district court's thorough explanation for why numerous conditions of supervised release were imposed but also quoting the district court as stating that the no contact with minors conditions "are fairly standard in sex offender cases"). Morales-Cruz implicitly endorses this practice through its faulty reasoning. Thus, not only is Morales-Cruz wrong on the merits, but it also provides fodder for a disturbing and questionable practice. I strongly urge my colleagues to reconsider this erroneous decision.

---

[12]Like Del Valle-Cruz, these conditions include invasive sex offender treatment and proscription against any contact with minors.