# United States Court of Appeals
## For the First Circuit

No. 19-1476

UNITED STATES OF AMERICA,

Appellee,

v.

ZACHARY BENOIT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Thompson, Circuit Judges.

Dorothy E. Graham, Assistant Federal Public Defender, on brief for appellant.
Seth R. Aframe, Assistant United States Attorney, and Scott W. Murray, United States Attorney, on brief for appellee.

September 1, 2020

**THOMPSON**, **Circuit Judge**.  The defendant, Zachary Benoit, pleaded guilty to one count of transporting child pornography and one count of possessing child pornography.  Benoit challenges the substantive reasonableness of his prison sentence and argues the district court abused its discretion when it imposed two special conditions of supervised release. After careful consideration, we affirm.

## BACKGROUND

### A.    The Crimes

Because Benoit pleaded guilty, we draw the facts of the case from the transcript of the sentencing hearing and undisputed portions of the Presentence Report ("PSR").  See United States v. Bermúdez–Meléndez, 827 F.3d 160, 162 (1st Cir. 2016).

In the summer and fall of 2017, New Hampshire law enforcement was investigating the online sharing of child sexual abuse images.  The investigation identified Benoit's IP address as one of the computers downloading and sharing hundreds of images and videos of children being sexually and physically abused.  After executing a search warrant at Benoit's home, police uncovered multiple computers and hardware for digital storage.  Officers confiscated and examined those devices and ultimately discovered 299 pictures and 418 videos depicting the sexual and physical abuse of children.

Benoit agreed to be interviewed by a detective and disclosed several things that prove relevant to our analysis. Benoit explained that he used multiple file sharing platforms to acquire child pornography. He admitted knowing that one of the platforms automatically permitted other users to access files from his library of child pornography and that he used another application to trade child pornography files with another user. He sent one user about 50 child pornography files in exchange for 100 similar files.

Benoit was not particularly discriminatory, disclosing to the detective that he liked all types of child pornography, though he preferred images of young girls. He built his library of pornography based on the searches of "other pedophiles," deleting files he downloaded if the children in them were "too young," which he explained was a child under five or six years old. He directed the detective to a file folder that had five videos depicting extensive sexual abuse and physical torture of a child under two years old. He described this folder as "disgusting" but held onto it. His interests in pornography, he declared, had become extreme and offensive since he first started downloading these images.

When asked about physical contact with children, Benoit denied ever abusing his own son or any child. He further denied

speaking to a child or to anyone representing themselves to be a child online.

In 2018, a grand jury indicted Benoit for Transportation of Child Pornography, in violation of 18 U.S.C. § 2252(a)(1), and Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

**B.    Dr. Guidry's Assessment**

On September 18, 2018, at the request of his attorney, Benoit met with a psychologist, Dr. Laurie L. Guidry (an expert hired by the defendant), for a psychosexual risk assessment. Benoit reported that he started masturbating to images of child sexual abuse when he was twenty-three years old (he was twenty-seven when he was arrested in this case). Benoit explained he learned he could download pornographic videos and started to view pornography that depicted pre-teens and then prepubescent females. While he did not prefer a particular age group, he did not like toddlers and babies, so, if he was searching for pornography, he would search for content depicting children aged nine years and older. Though he sometimes downloaded pornography that included the torture of children, Benoit said that he was not interested in material that indicated force. He also acknowledged that he understood children could not consent to sexual activity, and he again denied that he ever pursued or engaged in sexual contact with a child. At age eight, he divulged, he and his four-year-

- 4 -

old step-sister engaged in sexual misconduct.[1] When his parents discovered this behavior, they stopped it and got Benoit into counseling.

Dr. Guidry diagnosed Benoit with patterns of social anxiety hindering his ability to have comfortable interpersonal relationships and Dysthymic Disorder because he presented with symptoms of a generally depressed mood. Dr. Guidry determined that when comparing Benoit to other child pornography offenders, he "present[ed] a relatively low risk for recidivating with a contact sexual offense." This was based, in part, on what Dr. Guidry described as Benoit's "social phobia and reluctance to establish interpersonal connections" making it unlikely he would act on a sexual interest in children. Dr. Guidry further opined that Benoit's risk of committing another online sexual offense was "elevated if untreated but manageable if his psychological vulnerabilities are adequately addressed in treatment."

### C. The Guilty Plea and Sentencing

On November 7, 2018, Benoit pleaded guilty without a plea agreement. Six month later, the District Court held Benoit's sentencing hearing. The District Court calculated Benoit's total offense level to be 35 and his criminal history category to be I,

---

[1] The PSR noted this and that Benoit reported to probation that he was sexually abused by an eight- or nine-year-old neighbor when he was approximately five years old.

yielding a sentencing guideline range of 168 to 210 months.[2] Benoit did not object to this calculation. Citing the number of files in Benoit's possession, the amount of violence in some of the images, and Benoit's practice of sharing the images with others, including trading files for more child pornography, the government recommended a 168-month sentence. Defense counsel requested a 60-month sentence, arguing that, per Dr. Guidry's conclusion (whose report was filed under seal with Benoit's sentencing memo), Benoit presented a low risk of committing a contact sexual offense upon release, Benoit was cooperative with investigators, and he complied with all supervision conditions while he was released after his arrest. The defendant was meted out a 156-month prison term.

---

[2] The court relied on the PSR to reach this conclusion. The PSR calculated Benoit's base offense level to be a 22 and recommended a two-level increase "because the material involved prepubescent minors who had not attained the age of 12," a five-level increase "because the offense involved the distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain," a four-level increase "because the offense involved material that portrayed sadistic conduct," a five-level increase "because the offense involved more than 600 images," and a total of a three-level decrease for acceptance of responsibility. The PSR also recommended a two-level increase "because the offense involved the use of a computer," but the defendant objected to this increase, arguing that this enhancement would apply in almost every child pornography case and would thus defeat the purpose of enhancements (which are supposed to increase a sentence where the conduct is worse than the typical conduct of such an offense). The district court agreed with the defendant and found that the enhancement for using a computer should not apply. In total, those calculations resulted in the total offense level of 35.

Backing up for a moment, probation also recommended that Benoit's conditions of supervised release include restrictions on his contact with children. Specifically, the PSR included a recommended condition, Condition #1, that Benoit be prohibited from direct contact with any child under the age of 18, including his own son, without the permission of his probation officer. Condition #1 defined direct contact as "written communication, in-person communication, or physical contact," but not "incidental contact during ordinary daily activities in public places." The PSR also included a recommended condition, Condition #6, that Benoit not go "any place where [he] know[s] children under the age of 18 are likely to be, including parks, schools, playgrounds, and childcare facilities."

"Unreasonable" is how Benoit framed his objection to these conditions. Both, he argued, would restrict his contact with his son and any future children he may have, thus "interfer[ing] with his ability and right to raise his own children."

Disagreeing, the district court found the supervised release conditions to be "appropriate because . . . they are reasonably related to the Section 3553(a) factors; they do not involve any greater deprivation of liberty than is necessary; and [they are] consistent with the policy statements issued by the Sentencing Commission under the facts of this case." The court

amended Condition #6 to prohibit Benoit from going to places where he knows children are likely to be only without permission from his probation officer. With that change to Condition #6, the district court imposed Conditions #1 and #6 (as well as other conditions not relevant here).

**OUR TAKE**

On appeal, Benoit asks us to review both the length of his prison sentence and the special conditions restricting his contact with children, protestations he made below. We begin our analysis with Benoit's term of incarceration by considering whether the sentencing judge so poorly balanced the relevant considerations that the resulting sentence was unreasonable. We then turn to Benoit's argument about his contact with children, specifically his three-year-old son, after his release from prison.

### A.   Benoit's 156-Month Sentence

We review Benoit's sentence for an abuse of the sentencing judge's discretion. United States v. Perretta, 804 F.3d 53, 56 (1st Cir. 2015). "The touchstone of abuse of discretion review in federal sentencing is reasonableness." United States v. Vargas–Dávila, 649 F.3d 129, 130 (1st Cir. 2011) (citing Gall v. United States, 552 U.S. 38, 46 (2007)). A sentence is substantively unreasonable (and the sentencing judge has therefore abused his discretion) "only if it falls beyond the

expansive 'universe of reasonable sentencing outcomes.'" United States v. Rodríguez-Torres, 939 F.3d 16, 43 (1st Cir. 2019) (quoting Bermúdez-Meléndez, 827 F.3d at 167). Ever mindful that "[r]easonableness is itself an inherently fluid concept," Bermúdez-Meléndez, 827 F.3d at 167, we affirm where the sentencing judge "gave a plausible explanation and reached a defensible result," United States v. Chisholm, 940 F.3d 119, 132 (1st Cir. 2019) (citation omitted), cert. denied, 140 S. Ct. 1224 (2020). Put another way, we do not reverse simply because we would have sentenced the defendant differently. United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008).

Before imposing a sentence, the district court must calculate the sentencing guideline range, which serves as a "'starting point and the initial benchmark,' but which may not be presumed reasonable." United States v. Stone, 575 F.3d 83, 94 (1st Cir. 2009) (quoting Gall, 552 U.S. at 49). The district court considers the factors listed in 18 U.S.C. § 3553(a) and imposes "a sentence sufficient, but not greater than necessary" to achieve the sentencing statute's goals of appropriately punishing the defendant's conduct, deterring future unlawful conduct, protecting the public from the defendant, and providing the defendant with the care he needs. 18 U.S.C. § 3553(a). The court then evaluates the defendant's conduct and history through the prism of the sentencing guidelines range and sentencing factors to select a

- 9 -

sentence from the "universe of reasonable sentencing outcomes," Bermúdez-Meléndez, 827 F.3d at 167. "A sentencing court is under a mandate to consider [that] myriad of relevant factors, but the weighting of those factors is largely within the court's informed discretion." United States v. Hassan-Saleh-Mohamad, 930 F.3d 1, 9 (1st Cir. 2019) (quoting United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011)).

Benoit's argument that his sentence is substantively unreasonable breaks down to two, connected points. Benoit argues that the sentencing guidelines are especially harsh for child pornography offenses and the sentencing court gave the guidelines "undue weight." Relatedly, according to Benoit, while the court overvalued the guidelines, it undervalued his mitigating evidence, including that he had no prior criminal history, that he cooperated with law enforcement, and the findings in Dr. Guidry's report.

Our review of the sentencing transcript reveals that Benoit's argument lacks any factual support in the record. Beginning with his argument about the guidelines, we again recognize that the sentencing guidelines punishing child pornography crimes "are very stern," Clogston, 662 F.3d at 593 and, in some circumstances, are "harsher than necessary," Stone, 575 F.3d at 97. Even where the guidelines suggest a long prison term, a sentence is not substantively unreasonable where the sentencing court considers the guidelines along with the § 3553(a)

- 10 -

factors and the details of a defendant's case.  See Hassan-Saleh-Mohamad, 930 F.3d at 9.  Here, the sentencing court explicitly addressed these concerns, noting that "many courts" have in fact found the child pornography guidelines enhancements to be "problematic."  In apparent agreement with this observation, the court applied what it determined was a "reasonable variance" and sentenced Benoit to a sentence one year shorter than the shortest sentence within the guidelines.

We next search the record for support that the court, as Benoit claims, improperly disregarded mitigating evidence.  We are left wanting.  The district court announced its sentencing determination expressly mentioning that Benoit

- had not committed any contact offenses

- was sexually abused as a child

- had no prior criminal record

- had a good work history

- had cooperated with law enforcement during the investigation

- had complied with all release conditions, and

- was found by Dr. Guidry to be a low risk of committing a contact sexual offense and an elevated risk of recommitting an online sexual offense only

- 11 -

if his psychological vulnerabilities were left untreated.

The court considered this mitigating evidence and weighed it against other relevant factors, such as the seriousness of Benoit's offenses, the impact of child pornography on victims, Benoit's images depicting "very young children and extremely sadistic conduct," and Benoit's five-year "fixat[ion] on child pornography."

Perhaps this is why Benoit does not quite argue that the sentencing judge outright failed to consider mitigating factors and simply argues, rather, that the sentencing judge reached the wrong result. The court carefully assessed the relevant facts and, in our view, the resulting sentence is one which the court deemed "sufficient, but not more than necessary." "Though there can be no question that the result is stern, it is defensible." Stone, 575 F.3d at 96. We cannot say that this sentence is outside the "universe of reasonable sentenc[es]," Bermúdez-Meléndez, 827 F.3d at 167, and we therefore see no abuse of discretion.

**B.  Supervised Release Conditions**

We now turn to Benoit's appeal of Conditions #1 and #6 of supervised release. We remind the reader that Condition #1 prohibits Benoit from interacting with children, including his own, absent probation permission and Condition #6 restricts Benoit

from going places where he knows children will be, again, without probation approval.

When imposing conditions of supervised release, a sentencing court may order "any . . . condition it considers to be appropriate" if, based on the circumstances of the offense and the defendant's history, that condition "involves no greater deprivation of liberty than is reasonably necessary" to achieve the goals of sentencing, such as protecting the public. 18 U.S.C. § 3583(d). We review the imposition of supervised release conditions for an abuse of that broad discretion. United States v. Hood, 920 F.3d 87, 92 (1st Cir. 2019). "Under that standard, we review purely legal questions de novo, factual issues for clear error, and 'judgment calls' through a 'classically deferential' lens." Id. (quoting Riva v. Ficco, 615 F.3d 35, 40 (1st Cir. 2010)). "[T]he 'hallmark' that separates the permissible from the impermissible is whether, given the facts, a certain restriction was 'clearly unnecessary.'" United States v. Santiago, 769 F.3d 1, 9 (1st Cir. 2014) (quoting United States v. Brown, 235 F.3d 2, 7 (1st Cir. 2000)).

Benoit focuses on the impact of the Conditions on his ability to parent his son, who, at the time of his sentencing was, as earlier noted, three years of age. According to the PSR, as a result of his arrest, Benoit has had no contact with his son or with his son's mother, and his son's mother was seeking full

- 13 -

custody.  Benoit argues that because he has only committed non-contact offenses and there is no evidence that he has physically harmed his son or any child or that he is likely to, there is an insufficient relationship between his criminal conduct and the conditions limiting his contact with his son.

In support of his argument, Benoit leans heavily on United States v. Del Valle-Cruz, where we vacated similar conditions and remanded for resentencing.  785 F.3d 48, 62-64 (1st Cir. 2015).  This comparison is unpersuasive.  In Del Valle-Cruz, the defendant pleaded guilty to a Sex Offender Registry and Notification Act ("SORNA") violation for failing to register as a sex offender, which was required because of a sex offense involving a minor he committed 17 years earlier.  Id. at 52-54.  The defendant had no relevant criminal record in the years since his underlying conviction and, at the time of sentencing, was living with and raising his minor children.  Id.  Offering no reasons whatsoever for his decision, the judge imposed conditions similar to those Benoit complains of now.  Id. at 53-54.  We noted there that depriving a parent of their ability to raise their child is a serious deprivation that necessitates an explanation from the sentencing judge, especially if one is not apparent from the record.  Id.  We vacated those conditions and remanded for resentencing because the judge offered no such explanation and there was no discernable relationship between that defendant's

- 14 -

crime (failing to register) and preventing him from continuing to raise his children (who he had been parenting without incident). Id. at 58-62. We also noted that seventeen years had passed since any allegations of the defendant engaging in sexual conduct involving children, weakening any argument that the conditions achieved any goal of supervised release. Id. at 63-64.

In this arena, "our inquiry relies on case-by-case scrutiny of individual circumstances," United States v. Cabrera-Rivera, 893 F.3d 14, 29 (1st Cir. 2018), and the specifics of Benoit's case are simply unlike Del Valle-Cruz. When Benoit was sentenced, he had, a few months earlier, pleaded guilty to possession and distribution of graphic child pornography, which, considering all of the relevant facts, demonstrates a more active risk to children than a SORNA registration violation where the defendant had no more contemporary record of relevant misconduct. Compare Del Valle-Cruz, 785 F.3d at 52-54 with United States v. Mercado, 777 F.3d 532, 539 (1st Cir. 2015) (holding that restricting SORNA defendant's association with his minor children was reasonable where recent criminal history indicated risk of re-offending). Though Dr. Guidry (Benoit's expert) opined that Benoit's risk of recidivism would be low with proper treatment, the district court pointed out that at the time of sentencing, Benoit had undergone no such treatment. Further, the district court noted that the defendant had sexually abused his sister when

she was four years of age.  Therefore, on sentencing day, the district court reasonably concluded that Benoit was a risk to his young son, particularly where Benoit admitted that he viewed pornography depicting children of many ages and his file collection reflected both an interest in very young children and in violence directed at children.  Compare United States v. Pabon, 819 F.3d 26, 29, 33-34 (1st Cir. 2016) (affirming the imposition of conditions restricting the defendant's ability to interact with children, including his minor daughter, because the relationship between the conditions and the defendant's conduct was clear where the defendant had sexually abused a teenage girl and the district court "found that the conditions were necessary in order to keep the public safe, and especially to protect minors from [the defendant]'s violent inclinations") with Cabrera-Rivera, 893 F.3d at 33-34 (vacating conditions restricting child pornography defendant from raising his minor children where the conditions were unexplained by the court, the underlying criminal conduct did not involve violence, and there was "no basis in the record for concluding that [defendant] 'is a danger to [his] children'" (quoting United States v. Fey, 834 F.3d 1, 5 (2016))).

Overall, we do not think that it is "clearly unnecessary," Brown, 235 F.3d at 7, to restrict Benoit's interactions with children, including his own son with whom he currently has no contact, absent a probation officer's approval

where the record includes Benoit's own admissions that he regularly masturbated to child pornography and had assembled a collection of hundreds of child pornography files, including images where very young children were tortured.  See Pabon, 819 F.3d at 31 (approving of conditions restricting defendant's interactions with minors where the "defendant's conduct . . . indicates an enhanced risk to minors").  Further, upon release or in the years that follow, Benoit can petition the court to amend these conditions.  18 U.S.C. § 3583(e)(2).  In the meantime, "[t]here is no basis for believing that the probation officer will unreasonably withhold permission." Pabon, 819 F.3d at 33 (quoting Mercado, 777 F.3d at 539) (alteration in original).

## CONCLUSION

Accordingly, we **affirm** Benoit's sentence and the conditions of supervised release.