LIPEZ, Circuit Judge.
Appellant Edwin Cabrera-Rivera ("Cabrera") was charged in a two-count indictment with production and possession of child pornography. In a deal with the government, he agreed to plead guilty to the possession count -- an offense with no mandatory minimum sentence -- and the government agreed to dismiss the production count -- an offense with a mandatory fifteen-year term of imprisonment. As part of the deal, the parties agreed to recommend a term of 108 months of imprisonment. Cabrera also agreed to waive his right to appeal any sentence consistent with the parties' recommendation. The district court adopted the joint recommendation and sentenced Cabrera to the 108-month term. The court also sentenced Cabrera to a 144-month term of supervised release with multiple conditions.
Cabrera now challenges the length of his terms of imprisonment and supervised release and several of the supervised release conditions, contending that his appeal waiver was not made knowingly and voluntarily, or, in the alternative, that enforcing the waiver would result in a miscarriage of justice. After considering these arguments, we dismiss Cabrera's appeal of his terms of imprisonment and supervised release, as well as his objections to most of the supervised release conditions. The one exception is for a condition that, by its terms, prevents Cabrera from having any contact with his minor children without approval of a probation officer. Thus stated, the condition implicates Cabrera's fundamental constitutional interest in his relationship with his children, and it was imposed without any explanation of its necessity. We vacate that condition and direct the district court to reconsider it on remand.
I.
Because Cabrera's conviction and sentence followed the entry of a guilty plea, we draw the facts from the change-of-plea colloquy and the uncontested portions of the amended Presentence Investigation Report ("PSR"). See United States v. Vélez-Luciano, 814 F.3d 553, 556 (1st Cir. 2016). In 2012, Cabrera, then twenty-five years old, worked for an electrical contractor in Barranquitas, Puerto Rico. Jane Doe ("Doe"), a sixteen-year-old female, lived not far from Cabrera's place of work. At some point during that year, Cabrera and Doe began spending time together. Although the parties strenuously disagree about the nature of Cabrera and Doe's relationship -- a matter we discuss in more detail below -- they do not dispute that Cabrera encouraged Doe to take sexually *19 explicit photos of herself with a cellphone and send them to him.
In January 2013, Department of Homeland Security agents received information that Cabrera had engaged in sexually explicit communications with Doe. The agents subsequently interviewed Doe and learned that Cabrera had asked Doe to send him approximately fifty-eight sexually explicit photos of herself. The agents interviewed Cabrera, who admitted that he had requested the photos. The government then lawfully searched two cellphones owned by Cabrera and found sexually explicit photos of Doe.
Cabrera subsequently was indicted on one count of producing child pornography, in violation of 18 U.S.C. § 2251(a), and one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Cabrera and the government agreed that he would plead guilty to the possession count in exchange for dismissal of the production count. The plea agreement included a joint recommendation that Cabrera receive a 108-month term of imprisonment, but it included no recommendations regarding the duration or conditions of Cabrera's supervised release term. Under a section titled "Maximum Penalties," the agreement stated that Cabrera faced a prison term of no more than ten years and also noted -- incorrectly, it turned out -- that Cabrera was subject to a supervised release term of no more than three years. The plea agreement also included a "Waiver of Appeal" provision, in which Cabrera gave up his right to appeal his conviction and sentence if the sentence imposed was consistent with the parties' recommendation.
At a change-of-plea hearing before a magistrate judge, the government reviewed the terms of the plea agreement, all of which Cabrera said he understood. During the colloquy, however, the court questioned the provision stating that Cabrera's term of supervised release would be "not more than three (3) years." After research by the prosecutor and defense counsel -- who looked up the relevant statutes on their cellphones -- all agreed that, pursuant to 18 U.S.C. § 3583(k), Cabrera faced a term of supervised release of "not less than 5 [years], or life."[1] The magistrate judge gave Cabrera and his counsel a moment to confer about the change, and the court then told Cabrera:
Okay, Mr. Cabrera, that's what the law says. There is nothing your lawyer can do about it. I just need to make sure that you understand a possible maximum sentence and part of the maximum sentence could be a term of supervised release of up to life. Do you understand that?
Cabrera replied, "Yes."
After advising Cabrera that the sentencing judge would have considerable discretion in determining his sentence, the magistrate judge went on to explain the waiver of appeal provision: "your plea agreement contains a waiver of appeal in which you give up your right to appeal both the judgment and the sentence if the court accepts your plea agreement and sentences you according to its terms, conditions and recommendations. Do you know that?" Again, Cabrera responded, "Yes."
Upon completing the change-of-plea colloquy, the magistrate judge found that Cabrera was competent to plead guilty, he was aware of the nature of the charged conduct and the impact of pleading guilty, and his plea was knowing and voluntary.
*20 Hence, the magistrate judge recommended that the district court accept Cabrera's plea.
In its initial PSR, the Probation Office recommended a pair of two-point enhancements not contemplated by the plea agreement -- one for conduct involving the commission of a sexual act or sexual contact, pursuant to U.S.S.G. § 2G2.1(b)(2)(A), and one for the use of a computer, pursuant to U.S.S.G. § 2G2.1(b)(6)(B). Cabrera objected to the enhancement for sexual contact, and an amended PSR was issued that omitted it. The amended PSR determined Cabrera's guideline sentencing range ("GSR") to be 108-120 months, based on a total offense level of 31 and a Criminal History Category ("CHC") of I. The amended PSR also recommended fifteen special conditions of supervised release. Cabrera did not object to any of them.
At sentencing in February 2015, defense counsel agreed with the guidelines calculation set out in the amended PSR and informed the court that she had discussed the report with Cabrera. After hearing from Cabrera, Doe, and Doe's mother, the court explained the factors specified by 18 U.S.C. § 3553(a) that it had considered,[2] and it concluded as follows:
I hope not to be committing a mistake here. But at this time I will go with the recommendation of the government within the plea agreement. I find that still 9 years is a significant period of time and I hope that you use the same to continue reflecting on what you did. For you to realize that it doesn't matter whether the woman is the age of consent but you are not to engage in the type of actions that you engage. You are not to take advantage of persons with learning disabilities, because that is still another enhancement.
Regarding Cabrera's supervised release term, the court stated:
[T]he period of supervised release will be a significant one. In essence it will get to a point where if you do it right, if you restructure your life, if you don't give the Probation Officer any reason to believe that you are engaging in any similar action or in any other type of illegal action they will place you in minimal supervision. But if you set a different course in life, then they will be able to act.
Accordingly, the court sentenced Cabrera to a 108-month term of imprisonment and a 144-month term of supervised release. Then, without further explanation, the court imposed virtually all of the supervised release conditions included in the amended PSR, along with a few others. The court also reminded Cabrera that, because he had "stipulated" to the sentence imposed, the waiver of appeal provision in the plea agreement "has been triggered." Cabrera timely appealed.
II.
Cabrera seeks review of his sentence on two grounds. First, he argues that his appeal waiver should not be enforced because it was not made knowingly and voluntarily. Second, he argues that, even if *21 the appeal waiver is valid, we should disregard it and vacate his sentence and six conditions of supervised release to prevent a miscarriage of justice.
To evaluate the enforceability of a defendant's waiver of appeal, we consider three questions: (1) was the waiver's scope clearly delineated? (2) did the district court specifically inquire about the waiver of appellate rights? and (3) would denial of those rights constitute a miscarriage of justice? See United States v. Del Valle-Cruz, 785 F.3d 48, 54 (1st Cir. 2015) (citing United States v. Teeter, 257 F.3d 14, 24-25 (1st Cir. 2001) ). The first two prongs of what we have dubbed "the Teeter test" are designed to ensure that "the defendant freely and intelligently agreed to waive [his] right to appeal." Id. (quoting Teeter, 257 F.3d at 24 ) (alteration in original). "In examining whether the defendant knowingly and voluntarily waived his appellate rights, the text of the written plea agreement and the change-of-plea colloquy are of critical importance." Sotirion v. United States, 617 F.3d 27, 33 (1st Cir. 2010). But, even if the waiver is knowing and voluntary, we retain discretion to disregard that provision if enforcing it would result in a "miscarriage of justice." Teeter, 257 F.3d at 25.
A. Knowing and Voluntary
The Waiver of Appeal provision in Cabrera's plea agreement states that "[t]he Defendant knowingly and voluntarily waives the right to appeal the judgment and sentence in this case, provided that the defendant is sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions of this Plea Agreement." The "Sentence Recommendation" provision states, in relevant part: "The parties agree to recommend a term of imprisonment of one hundred and eight (108) months , should the defendant be a CHC of I, II or III."
Cabrera was sentenced to the specified 108-month term, and both the magistrate judge and district court reviewed the waiver with him. Hence, the government argues, this clearly stated appellate waiver was plainly triggered. Cabrera, however, asserts that he understood the agreement differently. In his view, "108 months would be the upper limit of any possible total sentence he might receive, not the time he had actually agreed to serve in prison." (Emphasis added.) That is, Cabrera maintains that the combined period of incarceration and supervised release comprise his "sentence," and the waiver of appeal is thus inoperative because his total sentence -- which included 144 months of supervised release -- exceeded the agreed-upon 108 months. Cabrera premises this argument on well-established First Circuit precedent holding that the word "sentence" in a plea agreement "encompasses every component of the sentence," including imprisonment, supervised release, and any attendant conditions. United States v. Santiago, 769 F.3d 1, 7 (1st Cir. 2014).
There are two related problems with this argument. First, the Sentence Recommendation provision explicitly provided for "a term of imprisonment of one hundred and eight (108) months," not a total "sentence" of that length. (Emphasis added; other emphasis deleted.) Second, our case law establishes that a defendant's waiver of the right to appeal his sentence covers the period of supervised release and any attendant conditions regardless of whether those post-incarceration penalties are expressly referenced in the plea agreement. See id.; see also, e.g., Vélez-Luciano, 814 F.3d at 557-58 ; United States v. Rojas, 780 F.3d 68, 69 (1st Cir. 2015).
That is not to say, however, that Cabrera's argument is unreasonable. If, *22 under our precedent, a "sentence" consists of both incarceration and supervised release, one may logically argue that a defendant who receives a term of supervised release that is not included in a "Sentence Recommendation" has not been "sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions of [his] plea agreement." But even if that argument could fairly be raised under our caselaw where a term of supervised release is entirely discretionary,[3] it has no traction here. As the magistrate judge clarified at Cabrera's change-of-plea hearing, Cabrera was subject to a mandatory minimum term of supervised release of five years. The plea agreement, as amended, specified this statutory term in the provision labeled "Maximum Penalties." Hence, in moving forward with the plea agreement, Cabrera necessarily agreed to both 108 months' imprisonment and a minimum of five years of supervised release. See, e.g., Vélez-Luciano, 814 F.3d at 559 (observing that "the plea agreement -- which [the defendant] signed and initialed -- noted that supervised release of at least five years was part of the maximum sentence").[4]
Cabrera resists this reasoning by challenging the adequacy of the plea colloquy concerning his exposure to a mandated term of supervised release. He contends that "the record is unclear about whether [he] fully understood the consequences of [his] guilty plea," noting that even his attorney was confused. To be sure, as described above, there was initial uncertainty about whether the applicable term of supervised release was capped at three years or would be at least five years. Once the court and counsel determined that the three-year maximum stated in the plea agreement was wrong, the only explanation of the error was given to Cabrera by his attorney off the record. The magistrate *23 judge then told Cabrera that "[t]here is nothing your lawyer can do about it."
If this were the entire colloquy, we would be concerned about what Cabrera's attorney told him and whether Cabrera understood that he was giving up his right to appeal a "sentence" that would include at least five years of supervised release in addition to the 108-month term of imprisonment.[5] However, the magistrate judge went on to expressly advise Cabrera that his maximum sentence could include "a term of supervised release of up to life." Asked if he understood that possibility, Cabrera replied "Yes." Subsequently, the magistrate judge explained the waiver of appeal provision, again eliciting a "Yes" response after asking Cabrera if he knew that his "plea agreement contains a waiver of appeal in which you give up your right to appeal both the judgment and the sentence if the court accepts your plea agreement and sentences you according to its terms, conditions and recommendations."
Under our precedent on the scope of sentencing appeal waivers, this colloquy was sufficient to satisfy Teeter's inquiry requirement. The magistrate judge's explanation of the appeal waiver's consequences was "specific enough to confirm the defendant's understanding of the waiver and [his] acquiescence in the relinquishment of rights that it betokens." Teeter, 257 F.3d at 24 n.7 ; see also Sotirion, 617 F.3d at 35 (upholding appellate waiver as knowing and voluntary where, inter alia, the court "did not fail to address the waiver provision entirely, nor did he contradict the terms of the written waiver"). Moreover, if any uncertainty remained, it was dispelled by the PSR, which reported both the recommended 108-month term of imprisonment, and the five-year statutory minimum term of supervised release. Indeed, Cabrera specifically advocated for a 108-month term of imprisonment in his objections to the PSR, and he recognized in the same document that he would be subject to a minimum five-year term of supervised release following the period of incarceration and that he would face restrictions on contact with his children.
Accordingly, Cabrera may challenge his sentence, including the term and conditions of supervised release, only if he can show that his case falls within the rare exception carved out by the final prong of the Teeter test: that enforcement of the waiver would work a miscarriage of justice.
B. Miscarriage of Justice
In Teeter, we cautioned that, because appellate waivers "are made before any manifestation of sentencing error emerges, appellate courts must remain free to grant relief from them in egregious cases." 257 F.3d at 25. Appellate waivers are "meant to bring finality to proceedings conducted in the ordinary course," but they are not intended to leave defendants "totally exposed to future vagaries (however harsh, unfair, or unforeseeable)." Id. Therefore, we held that "if denying a right of appeal would work a miscarriage of justice, the appellate court, in its sound *24 discretion, may refuse to honor the waiver." Id.
Still, the miscarriage-of-justice exception is to be applied "sparingly and without undue generosity." Sotirion, 617 F.3d at 36 (quoting Teeter, 257 F.3d at 26 ); see also Del Valle-Cruz, 785 F.3d at 56 (observing that the exception is "often sought but seldom meted out" (quoting Santiago, 769 F.3d at 10 )); United States v. Gil-Quezada, 445 F.3d 33, 37 (1st Cir. 2006) (noting that the miscarriage-of-justice standard "requires a strong showing of innocence, unfairness, or the like"); Teeter, 257 F.3d at 25 n.10 (stating that "a waiver should [not] be construed to bar an appeal if the trial court imposes a sentence exceeding the maximum penalty permitted by law or one that violates a material term of the plea agreement" (citations omitted)). Thus, "[t]o successfully invoke the miscarriage of justice exception, a 'garden-variety error will not suffice,' rather there must be, 'at a bare minimum, an increment of error more glaring than routine reversible error.' " Santiago, 769 F.3d at 8 (quoting United States v. Chambers, 710 F.3d 23, 31 (1st Cir. 2013) ). In making that assessment, "we consider, among other things, the clarity of the alleged error, its character and gravity, its impact on the defendant, any possible prejudice to the government, and the extent to which the defendant acquiesced in the result." Gil-Quezada, 445 F.3d at 37 ; see also United States v. Marte-de la Cruz, 876 F.3d 370, 374 (1st Cir. 2017) (same).
1. Terms of Imprisonment and Supervised Release
Cabrera makes a threshold argument that he should not be sentenced as a "typical sexual offender" because his relationship with Doe was "consensual and voluntary." Under Puerto Rico law, a consensual sexual relationship with Doe would have been lawful. Moreover, Cabrera emphasizes that there is no evidence of his "predatory exploitation" of Doe. Indeed, although the government maintains that Cabrera's "conduct was serious and involved the sexual exploitation of a minor," including physical sexual conduct (which Cabrera denies), it concedes that Doe "willingly provided [Cabrera] with the ... images." In short, Cabrera argues that his within-guidelines sentence is unduly harsh given his specific conduct -- what he calls "consensual sexting" -- and thus enforcing the waiver of appeal would effect a miscarriage of justice.
We disagree. A claim that an otherwise lawful, within-guidelines sentence is excessive asserts just the sort of "garden-variety" error that does not surmount the miscarriage-of-justice hurdle. See, e.g., Santiago, 769 F.3d at 8. Moreover, Cabrera concedes, as he must, that the terms of the plea agreement required the parties to jointly recommend a 108-month term of imprisonment -- a recommendation that Cabrera in fact made, both in his sentencing memorandum and at sentencing, and which the district court explicitly adopted. Cabrera can hardly claim that barring a challenge to his term of imprisonment amounts to a miscarriage of justice when he received the precise term for which he advocated.
Cabrera's objection to his term of supervised release likewise targets the sort of garden-variety error that need not be reviewed on appeal to avoid a miscarriage of justice. He asserts, with virtually no elaboration, that the district court gave an inadequate justification for picking the specific term that it did, but he does not explain why a twelve-year term is improper. Although the district court's remarks were brief, the court did reveal why it chose "a significant" period of time:
*25 [I]f you do it right, if you restructure your life, if you don't give the Probation Officer any reason to believe that you are engaging in any similar action or in any other type of illegal action they will place you in minimal supervision. But if you set a different course in life, then they will be able to act.
Moreover, lengthy terms of supervised release for sexual-misconduct crimes are not uncommon. See, e.g., Vélez-Luciano, 814 F.3d at 558 (fifteen years); Del Valle-Cruz, 785 F.3d at 53 (seven years); Rojas, 780 F.3d at 68 (ten years); Santiago, 769 F.3d at 6 (ten years); United States v. Morales-Cruz, 712 F.3d 71, 72 (1st Cir. 2013) (ten years); United States v. Perazza-Mercado, 553 F.3d 65, 66 (1st Cir. 2009) (fifteen years). Hence, enforcing the appellate waiver for Cabrera's contentions that the court inadequately explained the 144-month term, and should have selected a shorter term, does not result in a miscarriage of justice.
2. Supervised Release Conditions
We thus are left with only Cabrera's challenge to the following six of the twenty-three imposed conditions of supervised release[6] :
[1] The defendant shall not associate with codefendants, individuals with whom ... defendant has previously[ ] traded illicit[ ] material, a family member or friend under Criminal Justice supervision for a sex crime or identified past victim unless in a therapeutic setting and with the prior approval of the Probation Officer.
[2] The defendant shall have no personal contact with the victim and or minors under the age of 18 through mail, letters, telephone communication, audio or visual computer or electronic devices, visit social networking sights [sic] or third parties unless approved in advance by the Probation Officer. The only exception in this condition relies on the incidental contact in normal life with minors and those that relate to his relatives.
[3] The defendant shall not reside, be in the company, date or socialize by himself with a child or children below the age of 18 unless previously approved by the Probation Officer and after a third party risk has been duly assigned.
[4] The defendant shall not engage in a specified occupation, business or profession bearing a reasonable relationship to the conduct constituting the offense. Specifically the defendant shall not work with children under the age of 18 or hold a job that gives him authority over potential victims, gives him access to vulnerable populations or places him in settings in school or playgrounds. Any employment must be approved in advance by the Probation Officer who will make an assessment of the job placement and set employment restrictions if warranted based on the sex offender management procedure manual.
[5] The defendant shall not participate in any volunteer activity or be involved in any children or youth organization or *26 any group that would bring him in close contact with a child or children under the age of 18 unless prior approval of the Probation Officer.
[6] The defendant shall stay at his approved residence every night and not sleep or stay overnight anywhere else without prior approval from the probation office.
The government concedes that the court did not explain its reasons for imposing these six conditions. Indeed, based on our review of the sentencing transcript, the court provided no specific explanation for any of the imposed conditions of supervised release, and instead merely read aloud the list of conditions largely as proposed in the PSR. Nevertheless, the government contends that the rationale for the conditions is apparent from the record. Moreover, the government presses its argument that Cabrera's appeal waiver should operate to bar his challenge to all of these condition. Hence, we look to the record to determine whether the court's reasoning can be inferred as to each condition, keeping in mind that Cabrera's appeal waiver bars appellate review of all but the most egregiously unjustified conditions. See, e.g., Del Valle-Cruz, 785 F.3d at 55-56.
As to the first condition -- which restricts Cabrera's contact with "codefendants, individuals with whom ... [Cabrera] has previously[ ] traded illicit[ ] material," persons "under Criminal Justice supervision for a sex crime," or Doe -- Cabrera makes only a perfunctory attempt to explain why upholding it would result in a miscarriage of justice, claiming that this condition should not apply to him because he never engaged in "illicit trading" of child pornography, even if he did show the illicit pictures to his coworkers. Arguing that a boilerplate condition does not apply precisely to his conduct does not explain why enforcing the condition would amount to a miscarriage of justice, especially when unlawfully displaying images to others is conduct that Cabrera acknowledges doing.
As to the second, fourth, and fifth conditions -- restricting Cabrera's communication, employment, and volunteer activities with minors, respectively -- we find no error sufficient to support a miscarriage-of-justice finding. As we explained in United States v. Pabon, associational restrictions "operate to protect the public, especially children, from the defendant, as well as to promote the defendant's rehabilitation." 819 F.3d 26, 31 (1st Cir. 2016) (citation omitted). And, although the record supporting these conditions is limited, Cabrera nevertheless pled guilty to conduct involving the sexual exploitation of a minor, justifying at least some degree of associational restriction. Moreover, none of these conditions imposes "an outright ban on association with minors, but only curtail association, such as by requiring pre-approval by the probation officer or another authority." Id. at 31-32. With the opportunity for relief from the restrictions, and the additional exception made in condition two for Cabrera's communications with family members, these conditions are sufficiently circumscribed such that enforcing the appellate waiver would not constitute a miscarriage of justice. See id. at 32 ("Where the restriction is subject to supervision by the probation officer, a safeguard is that the defendant can petition the district court to modify the condition in the event that approval has been unreasonably withheld."); see also United States v. Fey, 834 F.3d 1, 6 (1st Cir. 2016) (upholding a condition, imposed without "express explanation," requiring the defendant to "seek approval from probation before accepting a job or volunteer activity that would bring him into direct contact with minors");
*27 Del Valle-Cruz, 785 F.3d at 57 ("Although we are troubled by the imposition of conditions that would prevent [the defendant] from engaging in activities such as volunteering at his son's school, ... we cannot say with assurance that their imposition would result in a miscarriage of justice.").
As to the sixth condition -- which requires Cabrera to "stay at his approved residence every night" unless he has "prior approval from the probation office" -- we similarly reject the miscarriage-of-justice contention. Although the court erred by providing no reasoning for its decision, "we cannot say it was 'an increment of error more glaring than routine reversible error.' " Del Valle-Cruz, 785 F.3d at 56 (quoting Santiago, 769 F.3d at 8 ). And, as with the associational restriction discussed above, Cabrera may request exceptions to this condition from his probation officer. See United States v. DaSilva, 844 F.3d 8, 14 (1st Cir. 2016) ("[G]iving the probation officer some authority to make exceptions as warranted is generally seen as a benefit of such orders in that it allows for flexibility and permits personal circumstances to be dealt with as they arise.").
Cabrera's sole remaining challenge is to the third condition of supervised release. To the extent that this condition limits his ability to "reside, be in the company, date or socialize by himself with" minors generally, we find no miscarriage of justice for the same reasons we have upheld the appeal waiver with respect to the other associational conditions. Cabrera argues, however, that this condition is overbroad because, unlike condition two, which makes an exception for communication with family members, condition three makes no exception for Cabrera's own children -- a son and a daughter who will still be minors when Cabrera completes his 108-month sentence. Cabrera contends that this condition impermissibly restricts his constitutional right to raise his children and, particularly because the district court gave no reasons for imposing it, barring an appellate challenge would effect a miscarriage of justice.[7]
We agree that, in this one respect, Cabrera meets the stringent criteria for relief under the miscarriage-of-justice exception. In Del Valle-Cruz, we stated that a waiver of appeal may be disregarded "when an error of significant or constitutional dimension is clear, and where there is 'little prejudice to the government should we take up the merits of [the defendant's] appeal.' " 785 F.3d at 56 (quoting Santiago, 769 F.3d at 10 ) (alteration in original). In particular, we concluded that we could look beyond the defendant's appellate waiver because the district court had provided no justification for two conditions that burdened the defendant's "fundamental constitutional liberty interest" in his relationship with his child. Id. at 57 ; see also Quilloin v. Walcott, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) (recognizing that "the relationship between parent and child is constitutionally protected"); Vélez-Luciano, 814 F.3d at 563 & n.12 (noting the "substantial constitutional questions" concerning restrictions on the defendant's "relationship with his minor children"); Del Valle-Cruz, 785 F.3d at 58 (stating that "[t]he district court is required *28 to provide a reasoned and case-specific explanation for the conditions it imposes" (internal quotation marks omitted)); Perazza-Mercado, 553 F.3d at 75 (noting that "courts of appeals have consistently required district courts to set forth factual findings to justify special probation conditions" (quoting United States v. Warren, 186 F.3d 358, 366 (3d Cir. 1999) ).
So too here. As in Del Valle-Cruz, the error is manifest: the district court imposed condition three, restricting Cabrera's relationship with his children, without any explanation, despite the clear precedent holding that "a district court is required to provide a reasoned and case-specific explanation for the sentence it imposes." United States v. Gilman, 478 F.3d 440, 446 (1st Cir. 2007) ; cf. United States v. Mercado, 777 F.3d 532, 539 (1st Cir. 2015) (rejecting challenge to conditions restricting defendant's interactions with minors where the district court detailed its reasons, including "to mitigate the risk of this particular defendant reoffending," and also linked "the rehabilitative and deterrent features of the ... conditions to the defendant's lengthy criminal history and his persistent failure to comply with the terms of his pretrial release" (emphasis added)).[8] In addition, we discern no burden on the government from merits review of Cabrera's challenge to the condition.
Although in some circumstances there would be reason to distinguish between a defendant's son and daughter in evaluating the asserted injustice of enforcing an appellate waiver for the associational restriction imposed by condition three, see, e.g., Pabon, 819 F.3d at 33 n.6 ; Vélez-Luciano, 814 F.3d at 563-64, the criminal activity at issue here -- a consensual exchange of sexually explicit images with a non-family member who is of age to consent under Puerto Rico law -- does not indicate a risk of harm to either of Cabrera's minor children. Nor does Cabrera's personal history otherwise present such a risk; his amended PSR reports stable family relationships and no history of drug use or alcohol-related problems. Absent countervailing considerations -- and the record before us reveals none -- the court's failure to give any rationale for depriving Cabrera of this constitutional liberty interest leaves "no doubt that enforcement of the waiver would be a miscarriage of justice." Del Valle-Cruz, 785 F.3d at 57 ; see also id. (noting that a condition imposed without explanation "does not automatically result in a miscarriage of justice," but the standard may be met "where, as here, the error is of this constitutional dimension").
The dissent contends that our decision protects the defendant's rights by "ignoring the equal rights of [Cabrera's] wife and children." To the contrary, we agree that the wellbeing of Cabrera's family members is a relevant consideration for the district court in evaluating whether to limit Cabrera's constitutional right to associate with his children. We hold only that a miscarriage of justice would result if we denied Cabrera an opportunity to challenge that significant, yet unexplained, limitation -- and that, as discussed infra, the condition cannot be upheld absent explanation.
*29 In arguing that the record reveals the district court's rationale for condition three, our dissenting colleague points to the court's "concern[ ] about the risk of illegal actions by the defendant while on supervised release" and the court's warnings to Cabrera not to repeat "the type of actions in which he engaged" or to take retaliatory action against Doe's family. The court did not, however, articulate concerns or warnings about Cabrera's interactions with his children. Hence, the concerns it expressed do not explain the constitutional limitation imposed by the condition.
Nor is the court's rationale inferable from the record. The dissent's detailed recounting of the defendant's activities with Doe -- a female of consenting age, and not a family member -- does not demonstrate a need to interfere with Cabrera's constitutionally protected relationship with his own offspring. The court did not reject out-of-hand the following depiction of Cabrera's conduct, which was offered by defense counsel:
[W]e are not here to pass judgment on moral values. Nevertheless he was in a relationship, he began a relationship with this young woman. He was hiding that relationship from his wife. And he incurred in the acts that the Court has before her. But this is not one of these people who prays on young women for the purpose of committing sexual offenses. This is just one of those cases of misjudgment of what the law is in relation to relationships with older young people and younger adults.
The court itself expressly recognized the positive aspects of Cabrera's background, noting that he "has had a stable relationship for the past six years," is a first-time offender, maintained stable employment, and had letters from relatives and neighbors attesting to his positive character. Our point, simply put, is that the district court's assessment of the circumstances, not ours, determines the validity of condition three. And given the facts as depicted by the court, the need for such a constitutionally significant limitation is not apparent.
Recognizing the relevance of our decision in Del Valle-Cruz to this case, the dissent attempts to distinguish the facts with an assertion that Cabrera was more of a danger to his son and daughter than the defendant in Del Valle-Cruz was to his children. As our discussion below reveals, the record before us does not support that conclusion. Our colleague further suggests that reliance on Del Valle-Cruz is inapt where a defendant is sentenced for an actual sex offense rather than for failing to register as a sex offender. Although that distinction is certainly relevant when we consider a challenge to a condition restricting parental rights, we have never taken such a categorical approach. Rather, as reflected in the discussion of our caselaw in the next section, our inquiry relies on case-by-case scrutiny of individual circumstances.
Accordingly, we exercise our discretion to bypass the appeal waiver with respect to condition three and proceed to the merits of Cabrera's challenge.
C. Cabrera's Contact with His Children.
Cabrera's failure to object to condition three at sentencing means our review is only for plain error. See Vélez-Luciano, 814 F.3d at 565. The government argues in a footnote, however, that we should not afford Cabrera even plain error review, contending that he has waived any arguments regarding his conditions of supervised release by failing to frame his arguments under that standard's familiar rubric. Specifically, the government points to our recent opinion in Pabon, *30 where we held that a defendant's challenges to his conditions of supervised release were waived "because he ha[d] not even attempted to meet his four-part burden for forfeited claims" under plain error review. Pabon, 819 F.3d at 33. Pabon, however, did not address such claims in the context of an appellate waiver. See id. at 30 n.3 (noting that the government "expressly declined" to rely on appeal waiver because it was "easier to resolve the appeal on the merits"). More importantly, as we have recently indicated, our circuit precedent is unclear as to "what distinction, if any, exists between the miscarriage-of-justice and the plain-error standards." Vélez-Luciano, 814 F.3d at 565 n.15 (emphasis added).[9] Given this lack of clarity, we decline to find that Cabrera has waived his challenge and review for plain error.[10]
None of our prior cases addressing conditions of supervised release that restrict parental rights is a perfect match for Cabrera's circumstances. As we shall describe, the defendants' criminal activities differ considerably from case to case, and the challenged conditions most often were imposed when the defendant had failed to register as a sex offender rather than for the sexual misconduct itself. The lapse in time between the sexual misconduct and the imposition of the challenged conditions thus also varies. Nonetheless, taken as a whole, our precedent provides relevant guidance for the plain error inquiry here.
We begin by elaborating on our analysis in Del Valle-Cruz. As recounted above, we disregarded the defendant's waiver of appeal because the unexplained imposition of conditions "prohibiting [the defendant] from having personal contact with, and living with, any minor child" constituted a miscarriage of justice when applied to the defendant's own children. 785 F.3d at 52, 57-58. We then decided on the merits that the district court had abused its discretion in imposing the conditions without explanation.
*31 Id. at 57-64. In reaching that conclusion, we relied heavily on the lack of a reasonable relationship between the defendant's crime -- violation of the federal Sex Offender Registration and Notification Act ("SORNA") -- and the ban on interaction with his minor children. See id. at 59-62.[11] We also noted the absence of any record evidence that the presence of a child in the home would create a risk of recidivism; the condition was imposed eighteen years after the underlying sexual offense; the defendant had committed no sexual or minor-based crimes during those eighteen years; he had lived with his older children for six years without incident; "his school and employment demonstrate[d] increasing stability in recent years"; and "[t]he district court provided no clue as to its reasoning." Id. We also held that the authorization of exceptions for contact with the defendant's own children, at the discretion of a probation officer, was insufficient to overcome the underlying error. See id. at 63 ("We ... decline the government's invitation to punt by placing a probation officer between parent and child.").[12]
Subsequently, in Vélez-Luciano, we faced a challenge to release conditions restricting contact with minors by a defendant who, like Cabrera, had pled guilty to possession of child pornography and waived his right to appeal. See 814 F.3d at 557. There, the record indicated the defendant had sexually abused two unrelated female minors. See id. at 556-57. We concluded that the miscarriage-of-justice standard would bar a challenge to the condition insofar as it applied to the defendant's interactions with his daughter, see id. at 563, noting, inter alia, that the defendant had lived for a period of time "in the same house as one of his minor victims," id. at 564 ; cf. Santiago, 769 F.3d at 6 & n.3, 9 (rejecting miscarriage-of-justice claim for a condition barring contact with minor children, including defendant's own, where defendant had molested the daughter of his former girlfriend while living with the girlfriend and her daughter). However, we also noted in dictum in Vélez-Luciano that applying the condition to the defendant's minor son raises "substantial constitutional questions" because the record lacked any evidence that the defendant was a risk to male minors. 814 F.3d at 564.[13]
*32 More recently, in Pabon, we rejected a defendant's challenge "that the district court failed to make sufficient findings justifying the restrictions on association with his minor daughter." 819 F.3d at 34. The defendant, who had previously been convicted of sexually abusing the fourteen-year-old daughter of his then-girlfriend, had been sentenced in the case on appeal for failing to register as a sex offender as required by SORNA. Id. at 29. Although we acknowledged that Del Valle-Cruz had "held that an infringement of a parent's right to associate with his child requires 'a greater justification,' " we concluded that, given the facts of the case, neither the restriction itself nor the district court's failure to more fully explain the condition, was "clear or obvious error." Id. at 34 (quoting Del Valle-Cruz, 785 F.3d at 62 ). Among other points, we noted that, "unlike Del Valle-Cruz, [Pabon] has a copious criminal history and received a clear explanation for the conditions imposed." Id. at 32.[14] However, we also acknowledged our observation in Vélez-Luciano, in dictum, that "substantial constitutional questions" are presented when a defendant convicted for sexual misconduct involving minor girls is restricted from associating with his son. Id. at 34 n.6.
In Fey, another SORNA failure-to-register case, we found plain error where the district court imposed, without explanation, a supervised release condition similar to the one Cabrera challenges here. 834 F.3d at 3. Specifically, we noted that the challenged condition, "in addition to having a weak temporal connection with Fey's sex offense," was overbroad, "prohibit[ing] Fey from having unapproved 'direct or indirect contact' with all children: male children, female children, and children of all ages, whether or not they are members of Fey's family." Id. Because the "record reveal[ed] no instances in which Fey committed a sex offense of any kind against boys, against pre-pubescent children, or against members of his family," we vacated the condition and remanded for resentencing "limited to a reexamination of that condition." Id. at 5, 8.
We can readily draw from this precedent the conclusion that condition three's unexplained prohibition on Cabrera's contact with his son clears the plain error hurdle. As reflected in our discussion above, we repeatedly have expressed concern about conditions that limit contact with male children when the defendant's offense involved no inappropriate conduct with males. Although the cited decisions all were issued after Cabrera's sentencing in February 2015, both the parental liberty *33 interest at stake and the requirement to justify conditions of supervised release were well established by that time. See Quilloin, 434 U.S. at 255, 98 S.Ct. 549 (noting, in 1978, the importance of the relationship between parent and child); Perazza-Mercado, 553 F.3d at 75 (noting, in 2009, that we had "consistently required district courts to set forth factual findings" to justify special conditions (quoting Warren, 186 F.3d at 366 )). We thus have no difficulty concluding that the summary prohibition on Cabrera's contact with his son, imposed "without apparent grounding in the record," is a plain, prejudicial error of such consequence that this aspect of Cabrera's sentencing "impair[s] the 'fairness, integrity, or public reputation of the judicial proceedings.' " Fey, 834 F.3d at 5 (quoting Perazza-Mercado, 553 F.3d at 79 ).
The impropriety of the summary prohibition on contact between Cabrera and his daughter, subject to Probation Office approval, is arguably less obvious. Cabrera's criminal activity did involve a young female. In addition, the sentencing condition he challenges was imposed for the sexual misconduct crime itself and not -- as in most of the cases above -- for a SORNA crime that occurred years after the sexual misconduct. On the facts before us, however, the unexplained bar against Cabrera's contact with his daughter is also troubling. Unlike the defendant's unlawful activity in Pabon, where we rejected a claim of plain error, Cabrera's crime did not involve a girl below the applicable age of consent and did not take place at a domestic partner's home. See 819 F.3d at 32. To the contrary -- and without minimizing or condoning Cabrera's criminal conduct in any way -- any physical relationship he had with Doe would not itself have been unlawful. Moreover, unlike the defendant in Pabon-- who had "violent inclinations," 819 F.3d at 33 -- Cabrera's PSR depicts him as a stable and supportive father and domestic partner.[15] Hence, as in Fey, where we vacated the associational condition, there is no basis in the record for concluding that Cabrera "is a danger to [his] children," irrespective of gender. 834 F.3d at 5.[16]
As we explained in both Del Valle-Cruz and Fey, because impairment of "a defendant's relationship with his child involve[s] a very significant deprivation of liberty, [it] require[s] a greater justification." Del Valle-Cruz, 785 F.3d at 62 (emphasis added). Where, as here, no justification at all is given, and the record reveals none, condition three must be vacated insofar as it applies to both of his children. To be clear, we are not foreclosing the district court from restricting Cabrera's interactions with his daughter or son under *34 18 U.S.C. § 3583(d), which gives courts the discretion to order conditions of supervised release that meet the statute's specified requirements.[17] However, any such restrictions imposed on remand must be explained and supported by the record.[18]
III.
For the reasons given above, we dismiss Cabrera's appeal of his terms of imprisonment and supervised release, and of the first, second, fourth, fifth, and sixth conditions of supervised release. We vacate the third condition of supervised release, and remand to the district court for reconsideration of that condition.
So ordered.

During the change-of-plea hearing, this language, without our emphasis added, was handwritten as a correction on the plea agreement, and the change appears to be initialed by Cabrera.

The court stated that it had considered the following factors: (1) Cabrera's age and tenth-grade education; (2) that he was in a long-term relationship and has two young children; (3) his status as a first-time offender; (4) his use of alcohol; (5) his stable employment and good conduct while at work; (6) letters of support from relatives, in-laws, and neighbors; (7) that he knew the victim was a minor; (8) that he had been in contact with the victim since 2012 and knew she was receiving psychological therapy; (9) that he taught the victim how to send the sexually explicit images; (10) that he admitted showing the images to his co-workers and that a co-worker had told him the images could lead to trouble; and (11) that he severely injured the victim's brother during a fight with her relatives.

Where the decision to impose supervised release is left to the district court's discretion, and the parties recommend only a term of imprisonment, a defendant could plausibly contend that, under ordinary contract principles, a sentence that includes a term of supervised release is not "in accordance with" a "Sentence Recommendation" proposing only a term of imprisonment. However, where a statute sets a mandatory minimum term of supervised release, that statutory minimum is unavoidably incorporated within a plea agreement whether or not expressly stated in the Sentence Recommendation.
Our precedent does not recognize this discretionary vs. mandatory difference, and the broad language in our cases poses a possible barrier to an appellant seeking to rely on such a distinction. However, as Cabrera points out, the plea agreements in a number of our principal cases on appellate sentencing waivers specified that the defendant faced a mandatory minimum five-year term of supervised release. Hence, we would have had no occasion in those cases to confront any possible differences between discretionary and mandatory terms of supervised release. See Vélez-Luciano, 814 F.3d at 559 (noting five-year mandatory minimum term of supervised release); Rojas, No. 3:13-cr-00149-JAG-MEL, Docket No. 34, at 2 (filed Aug. 6, 2013) (plea agreement specifying "not less than five (5) years"); Santiago, No. 3:12-cr-00260-DRD, Docket No. 31, at 2 (filed Aug. 31, 2012) (same: "not less than 5 years"); Del Valle-Cruz, No. 3:12-cr-00262-JAF, Docket No. 34, at 2 (filed Aug. 6, 2012) (same: "not less than 5 years").

The dissent states that we have incorrectly suggested that "a waiver of appeal may not extend to a term of supervised release where that term is left to the court's discretion by the plea agreement." Dissent, at n.2. Yet, the term (or duration) of supervised release is a statutory element of a sentence for which the parties may, and sometimes do, negotiate. Accordingly, contract principles reasonably could be applied to such negotiated terms. By contrast, the conditions of supervised release are neither governed by statute nor included in the Sentence Recommendation provision of plea agreements. We have no need to consider here the impact on challenges to conditions of release if a waiver of appeal is determined not to bar appeal of the supervised release term.

Although certain of Cabrera's contentions in challenging the knowing and voluntary nature of his waiver of appeal appear to implicate his acceptance of the plea agreement itself, Cabrera emphatically disclaims any intention to challenge the agreement as a whole. Absent the plea deal, Cabrera could have faced a fifteen-year mandatory minimum sentence on the count charging him with producing child pornography. See 18 U.S.C. § 2251(e). He asserts that his arguments are focused solely on the scope of the appellate waiver and whether he knowingly waived his right to appeal a "sentence" that exceeded the recommended 108 months' imprisonment.

The district court did not number the conditions of supervised release, and we have added numbers here only for ease of reference. We note that, in some instances, the court divided into several separate conditions a single, multi-part recommendation contained in the PSR. Hence, the fifteen numbered conditions listed in the PSR roughly correlate with twenty of the conditions articulated by the court at the sentencing hearing. The additional three conditions prohibited Cabrera from committing another crime or unlawfully possessing controlled substances (requirements noted in the PSR separately from the recommended conditions), and required him to "participate in an approved in-patient or out-patient mental health treatment program."

Our dissenting colleague implies that, instead of deciding the miscarriage-of-justice question, we should remand for clarification on whether the district court meant to include Cabrera's own children within the scope of condition three. In our view, there is no lack of clarity in the condition as announced by the court. In stark contrast to condition two, condition three contains no exception for Cabrera's children. Given that the condition as imposed clearly restricts a fundamental liberty interest, see infra, we can see no justification for avoiding the miscarriage-of-justice inquiry.

In response to an inquiry from the panel, the parties obtained information from the United States Probation Office for the District of Puerto Rico on the use of this condition in that jurisdiction. Probation Officer Charlette Agostini reported that "[t]his special condition is imposed in cases involving sex offenses against minors." She stated that "[t]he courts routinely review each case individually and determine which conditions reasonably apply given the particularity of each case." An on-the-record explanation of the court's reasoning is necessary, however, to confirm that such an assessment took place and to "enable[ ] appellate review." Perazza-Mercado, 553 F.3d at 75.

We acknowledge the artificiality of deciding that a challenge to a supervised release condition is sufficiently persuasive to meet the miscarriage-of-justice standard, and then separately analyzing the merits of the challenge, when the arguments made for a miscarriage of justice are indistinguishable from the arguments made on the merits. Indeed, it is difficult to imagine any argument that could vault the exceptionally high hurdle imposed by the miscarriage-of-justice standard only to stumble on abuse-of-discretion or plain-error review. See Vélez-Luciano, 814 F.3d at 565 n.15 (finding that condition of supervised release amounted to both a miscarriage of justice and plain error). Regardless, our recent cases in this area follow this two-step approach. See Vélez-Luciano, 814 F.3d at 565 n.15 ; Del Valle-Cruz, 785 F.3d at 57 (deciding whether appeal waiver would work a miscarriage of justice before "proceed[ing] to consider the merits of the appeal" under abuse-of-discretion standard). Hence, we will do the same, leaving for another day the questions of whether a separate inquiry on the merits is necessary after finding a miscarriage of justice, and whether plain-error and miscarriage-of-justice review are functional equivalents.

Notwithstanding our court's recognition of uncertainty about whether the plain error and miscarriage-of-justice standards fully overlap, and the importance of the right at stake here, the dissent takes the unreasonable position that Cabrera is not entitled to plain error review. In justifying that position, the dissent dismisses as irrelevant an important difference between this case and Pabon. In Pabon, we did not address the miscarriage-of-justice standard, and the opinion does not describe the arguments, if any, that the defendant offered on that subject. By contrast, in presenting his miscarriage-of-justice argument, Cabrera has, in effect, argued each element of the plain error test, and we have addressed them. See United States v. Garay-Sierra, 885 F.3d 7, 12 (1st Cir. 2018) (describing the four elements of plain error as "error, plainness, prejudice to [him], and the threat of a miscarriage of justice" (quoting United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011) (alteration in original)).

SORNA defines "sex offender" as "an individual who was convicted of a sex offense," and provides, inter alia, that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 34 U.S.C. §§ 20911(1), 20913(a).

The dissent fails to adhere to this precedent in concluding that the district court, without explanation, can place a probation officer between Cabrera and his children. Under Del Valle-Cruz, such an intrusion into the parental relationship, absent explanation from the district court, is unsupportable. The case highlighted by the dissent, United States v. Mercado, 777 F.3d 532 (1st Cir. 2015), is not to the contrary. As we explained in rejecting the defendant's challenge to various conditions, including restricted contact with his children, the district court there "specifically linked the rehabilitative and deterrent features of the supervised release term and its conditions to the defendant's lengthy criminal history and his persistent failure to comply with the terms of his pretrial release." Id. at 539. In this case, however, the court erroneously gave no explanation for condition three. Moreover, the panel in Mercado noted that the defendant had neither lived with, nor supported, his two minor children for some years. Id. at 539 n.3. By contrast, the record indicates that Cabrera's nuclear family was intact. Indeed, according to defense counsel, Cabrera's wife brought their second child -- born after his arrest -- to the prison to see him.

In Vélez-Luciano, the defendant did not raise the constitutional implications of restricting contact with his children until oral argument, and we therefore deemed the argument waived. 814 F.3d at 563. We nonetheless discussed the issue at some length, and "highlight[ed]" the constitutional issue triggered by application of the condition to the defendant's son, "so that the Probation Officer does not operate on a blank legal canvas should [the defendant] request, after his release from prison ..., the Probation Officer to exercise the authority, delegated by the District Judge, to make exceptions from this condition." Id. at 564.

Pabon had preserved some of his challenges to the associational conditions, and we reviewed those for abuse-of-discretion. See 819 F.3d at 30. Other challenges, including to restrictions on contact with his daughter, were unpreserved and subject only to plain-error review. See id. at 33. We held, with respect to both categories, that the court's explanation for imposing the conditions was adequate. We described the court's rationales, in pertinent part, as follows:
The court found that the conditions were necessary in order to keep the public safe, and especially to protect minors from Pabon's violent inclinations. It explained that Pabon had "demons" he needed to deal with, a history of beating up women that needed to be addressed, and an inability to control his anger that made him a potential danger to children.
819 F.3d at 33.

The dissent suggests that we have provided a false contrast with respect to violence, pointing to the fight between Cabrera and Doe's brother that left the brother severely injured. The facts surrounding that encounter are disputed, with Cabrera maintaining that he acted in self-defense. At the sentencing hearing, defense counsel reported that Cabrera also was wounded and received treatment at a hospital. Although the district court found the severity of the brother's injuries "troublesome," it also noted "that probably there could be an argument of self defense." Whatever the full story, this isolated incident is a far cry from Pabon's "history of beating up women" and "inability to control his anger." 819 F.3d at 33.

The dissent suggests that condition three is an appropriate protection for Cabrera's daughter because she will turn sixteen -- Doe's age when Cabrera engaged in sexually explicit communications with her -- during Cabrera's supervised release term. However, given the obvious differences in the two relationships, it is not apparent how Cabrera's interactions with Doe support limiting his parental rights.

Section 3583(d) states, in pertinent part, that the court may order any "condition it considers to be appropriate" to the extent that the condition, inter alia, "involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)." Those subsections of § 3553(a)(2) refer to
the need for the sentence imposed ...
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
18 U.S.C. § 3553(a)(2).

Although we do not minimize the burdens on trial judges in this circuit, who often have exceptionally heavy criminal dockets, we note a continuing pattern of constitutionally significant associational conditions imposed with little or no explanation. We urge district courts to alter that practice by giving "reasoned and case-specific explanation[s]" for the conditions they impose. Perazza-Mercado, 553 F.3d at 78 (quoting Gilman, 478 F.3d at 446 ). Such explanations are not only required by statute, see 18 U.S.C. § 3553(c), but they also enhance appellate review. See, e.g., Del Valle-Cruz, 785 F.3d at 58.